FREDA SNYDER WILSON, Defendant in Error, *vs.* IDA J.
SMART *et al.* Plaintiffs in Error.

*Opinion filed February 16, 1927.*

1. DIVORCE—*court having jurisdiction by publication may order
sale of defendant's property to satisfy lien for alimony.* While a
purely personal decree awarding alimony against a non-resident
defendant who is notified of the proceeding constructively by publi-
cation and who does not appear is not binding upon him, the pro-
ceeding will partake of the nature of a proceeding *in rem* where the
complainant describes property of the defendant within the court's
jurisdiction and prays that alimony and solicitor's fees be made a
lien on said property, and the decree may provide that in the event
of the defendant's failure to pay the sum fixed for alimony and
solicitor's fees within a stated time the property shall be sold to
satisfy the decree.

2. SAME—*decree may make alimony a lien against defendant's
property.* The provisions of the Divorce and Chancery acts em-
power the court to subject the divorced husband's property within
its jurisdiction to a lien or charge for the alimony award and to
enforce its payment by sale of such property, and the court may
even assign to the wife, as alimony, a part or all of the husband's
real estate in fee.

3. SAME—*error in ordering solicitor's fees paid to a solicitor
instead of to the complainant cannot be attacked collaterally.* A
solicitor's fee, when allowed in a divorce suit, should be ordered
paid to the party and not to his or her solicitor, but the error in
ordering it paid to the solicitor cannot be attacked in a collat-
eral proceeding for partition, in which the complainant claims title
through a sheriff's deed issued pursuant to a sale of property in the
divorce proceeding to satisfy alimony and solicitor's fees, which
were made a lien on the property.

4. ACTIONS AND DEFENSES—*what is a proceeding in rem.* In the
strict sense of the term a proceeding *in rem* is one which is taken
directly against property or one which is brought to enforce a
right in the thing itself, and the distinguishing characteristic of
judgments *in rem* is that they operate directly upon the property
and are binding upon all persons in so far as their interests in the
property are concerned.

5. PROCESS—*constructive service will authorize decree affect-
ing property within the court's jurisdiction.* Although a court is
powerless to enter a personal decree based solely on constructive

service of process by publication against a non-resident defendant, yet it has power to deal with his property within the court's jurisdiction where the object of the action is to reach and dispose of such property or of some interest therein, and the court may enter a decree binding on such property.

WRIT OF ERROR to the Circuit Court of Shelby county; the Hon. F. R. DOVE, Judge, presiding.

J. J. BAKER, and A. J. STEIDLEY, for plaintiffs in error.

S. S. CLAPPER, and GEORGE B. RHOADS, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Freda Snyder Wilson on May 19, 1924, filed her bill in the circuit court of Shelby county for the partition of 280 acres of land in that county. The bill alleged, among other things, that Michael Snyder on May 8, 1882, conveyed the land to his son Michael Snyder, Jr., for life, with the remainder at the latter's death to the heirs of his body; that Michael Snyder, Jr., died on May 15, 1924, leaving him surviving as such heirs, Ida J. Smart, Lucy Thomas, Margaret Hudson, Lena Moore and Albert C. Snyder; that the complainant is the daughter of Albert C. Snyder and Agnes M. Snyder, his wife, and that the undivided interest of Albert C. Snyder, subject to the life estate of Michael Snyder, Jr., his father, was sold at a sheriff's sale, and by a sheriff's deed dated and recorded on October 6, 1898, was conveyed to Agnes M. Snyder, who died testate on February 15, 1914, and by her last will devised her interest in the land to the complainant. Albert C. Snyder was not made a party to the partition suit, and on June 17, 1924, he filed his petition to become a defendant thereto. The petition alleged that Agnes M. Snyder was his former wife and while he was a resident of the State of Colorado she instituted a suit for divorce against him; that service was

obtained solely by publication and the bill was taken as confessed; that a decree was rendered, which granted her a divorce, $650 as alimony and $50 solicitor's fees, and directed that unless he paid the alimony within sixty days execution should issue and his interest in the land should be sold to satisfy the execution; that an execution was issued, the land was sold and Agnes M. Snyder became the purchaser at the pretended sale; that the sale was void and she acquired no interest in the land; that the petitioner had not conveyed nor had he been divested of his interest, and that he owned an undivided one-fifth of the land in fee simple. The prayer of the petition was granted and Snyder filed an answer to the bill for partition, which amplified the allegations of his petition and denied that the complainant was entitled to the relief sought. A joint and several answer setting forth their interests and averring the invalidity of the sale and conveyance to Agnes M. Snyder was filed by Ida J. Smart, Lucy Thomas and Lena Moore. These defendants joined with Albert C. Snyder in a cross-bill, which repeated the allegations of the petition and the answers, set forth the interests claimed by the cross-complainants and sought the cancellation of the sheriff's deed to Agnes M. Snyder, its removal as a cloud on the title and partition of the land. Freda Snyder Wilson, the original complainant, in her answer to the cross-bill set out the conveyances and proceedings by and through which she claimed ownership of an undivided one-fifth of the land and denied that the cross-complainant Albert C. Snyder had any interest therein. After the cause was at issue a hearing followed, which resulted in a decree dismissing the cross-bill for want of equity and awarding partition and appointing commissioners in accordance with the prayer of the original bill. To review the record the cross-complainants prosecute this writ of error.

It appears from the evidence that on February 18, 1897, Agnes M. Snyder, the wife of Albert C. Snyder, filed her

bill for divorce against him in the circuit court of Shelby county, charging desertion. The bill alleged the requisite jurisdictional facts, the birth of the child, Freda M. Snyder, as the issue of the marriage, the ownership by the husband, in fee, of an undivided one-fifth of the land in question, specifically described, subject to the life estate of Michael Snyder, Jr., his father, the complainant's lack of means of support, her husband's threat to dispose of his property and his intention to leave her destitute. In addition to a divorce the prayer of the bill was for the care and custody of the child, an allowance out of the land to support and maintain the complainant and the child, solicitor's fees to prosecute the suit, and an order restraining the disposition of the defendant's property. Summons was issued, but the return showed that the defendant could not be found in Shelby county. An affidavit was filed in the suit, in which it was averred that the defendant was a nonresident of the State and that his place of residence was Basault, Eagle county, Colorado. Notice of the pendency of the suit, the names of the parties thereto, the title of the court and the time and place of the return of summons was published in a newspaper of the county once in each week for four successive weeks. Within ten days after the first publication of the notice the clerk of the court mailed a copy addressed to the defendant at his place of residence as stated in the affidavit. The defendant failed to appear and the bill was taken as confessed by him. After a hearing the court by its decree, rendered on April 15, 1897, found that the material allegations of the bill were true, granted the complainant a divorce, awarded her the custody of the child, and ordered the defendant to pay to the clerk of the court, for the use of the complainant, $650 as alimony. The court found the sum mentioned to be reasonable for the support and maintenance of the complainant and the child and that it was proper to assess it in gross rather than in periodical installments. The alimony

so fixed and $50 solicitor's fees were specifically made a lien or charge upon the undivided one-fifth interest of the defendant in the land in question, and it was ordered that if the alimony, solicitor's fees and costs were not paid within sixty days, then, to obtain satisfaction, that execution should issue and the defendant's interest in the land should be sold by the sheriff in the manner of other sales of real estate upon execution, subject, however, to the right of redemption. The defendant failed to satisfy the decree and in consequence an execution was issued, by virtue of which the sheriff sold the defendant's interest in the land to the complainant and the sheriff's certificate of sale was issued to her. Before the period of redemption expired she married Henry M. Otta. No redemption from the sale having been made, the sheriff, by deed dated October 6, 1898, conveyed Snyder's interest to her by the name of Agnes M. Otta, formerly Snyder. She died testate on February 15, 1914, her last will was admitted to record by the county court of Shelby county, and by that instrument she devised all her real estate to her daughter, Freda M. Snyder, later Freda Snyder Wilson, the defendant in error.

Albert C. Snyder testified that he was first informed of the divorce in the year 1898 by an aunt who resided in Moweaqua, in Shelby county, with whom he corresponded every two or three weeks. He insisted, however, that he did not know until 1916 that his interest in the land had been sold and conveyed by the sheriff. On March 15, 1900, within three years after the decree of divorce had been rendered, he married Margaret Snyder, who became his second wife.

The validity of the decree to the extent that it granted Agnes M. Snyder a divorce is not questioned by the plaintiffs in error. Albert C. Snyder obviously accepted that part of the decree, for he married again after the decree was rendered. The husband was not a resident of the State when the suit for divorce was prosecuted. Service upon

him was obtained by the publication and mailing of notice in accordance with the statute, and the principal controversy arises over the award of alimony, to be realized, if not otherwise paid, by a sale of the non-resident husband's interest in the land situated within the court's jurisdiction. The plaintiffs in error contend that an action for divorce is a proceeding *in personam;* that a decree for alimony is a personal decree unauthorized by constructive service of process; that the circuit court of Shelby county had no power or authority to direct the satisfaction of the provision of the decree for alimony out of the defendant's real estate in that county, and that in consequence the execution and sheriff's sale pursuant to the decree were void.

A purely personal decree in a divorce suit awarding alimony against a non-resident defendant who is notified of the proceeding constructively by publication and who does not appear is not binding upon him. (2 Bishop on Marriage, Divorce and Separation, sec. 79; Brown on Jurisdiction,—2d ed.—sec. 7; 2 Black on Judgments,—2d ed.— sec. 933.) Divorce proceedings are, however, in some aspects purely *in personam* while in others they are clearly *in rem.* (3 Freeman on Judgments,—5th ed.—sec. 1427; 2 Schouler on Marriage, Divorce, Separation and Domestic Relations,—6th ed.—sec. 1467.) In the strict sense of the term a proceeding *in rem* is one which is taken directly against property or one which is brought to enforce a right in the thing itself. The distinguishing characteristic of judgments *in rem* is that they operate directly upon the property and are binding upon all persons in so far as their interests in the property are concerned. (*Austin* v. *Royal League,* 316 Ill. 188.) Although a court is powerless to enter a personal decree based solely on constructive service of process against a non-resident defendant, yet it has power to deal with his property within the court's territorial jurisdiction. Substituted service by publication and mailing, or in any other authorized form, is usually sufficient

where the object of the action is to reach and dispose of property, or of some interest in property, within the State. Such service may answer in all actions which are substantially proceedings *in rem.* (*Williams* v. *Williams,* 221 Ill. 541; *Bickerdike* v. *Allen,* 157 id. 95; *Cloyd* v. *Trotter,* 118 id. 391.) In *Pennoyer* v. *Neff,* 95 U. S. 714, the Supreme Court of the United States said: ":Every State owes protection to its own citizens. * * * It is in virtue of the State's jurisdiction over the property of the non-resident situated within its limits that its tribunals can inquire into that non-resident's obligations to its own citizens, and the inquiry can then be carried only to the extent necessary to control the disposition of the property." Constructive service of process upon a non-resident defendant in a proceeding against or concerning specific property of the defendant within the court's jurisdiction will enable the court to render a decree which is binding upon such property. Decrees for alimony or maintenance in such proceedings, based upon such service, have been sustained. *Pennington* v. *Fourth Nat. Bank,* 243 U. S. 269; *Forrester* v. *Forrester,* 155 Ga. 722; *Shipley* v. *Shipley,* 187 Iowa, 1295; *Twing* v. *O'Meara,* 59 id. 326; *Wesner* v. *O'Brien,* 56 Kan. 724; *Blackinton* v. *Blackinton,* 141 Mass. 432; *Rhoades* v. *Rhoades,* 78 Neb. 495; *Wilder* v. *Wilder,* 93 Vt. 105; *Closson* v. *Closson,* 215 Pac. (Wyo.) 485, 29 A. L. R. 1371, and note 1381.

The Divorce act makes provision for both temporary and permanent alimony. (Cahill's Stat. 1925, secs. 15, 18, p. 935.) In case the wife is complainant the court may order the defendant to give reasonable security for permanent alimony and maintenance or may enforce their payment in any other manner consistent with the rules and practice of the court. (Divorce act, sec. 18.) The process, practice and proceedings under the Divorce act are the same as in other cases in chancery except as otherwise provided in that act and except that the answer of the defendant need

not be on oath. (Cahill's Stat. 1925, sec. 6, p. 935.) Section 42 of the Chancery act provides that the court may enforce its decree by sequestration of real and personal estate, by causing possession of such property to be delivered to the party entitled thereto, or by ordering the demand of the complainant to be paid out of the effects or estate sequestered. (Cahill's Stat. 1925, p. 219.) By section 44 of the same act a decree for money shall be a lien on the lands and tenements of the party against whom it is entered, to the same extent and under the same limitations as a judgment at law. All of these statutory provisions were effective when Agnes M. Snyder filed her suit for divorce and have continued in effect ever since.

The provisions of the Divorce and Chancery acts to which reference has been made empower the court to subject the divorced husband's property within its jurisdiction to a lien or charge for the alimony awarded and to enforce its payment by a sale of such property. The court may even assign to the wife, as alimony, a part or all of the husband's real estate in fee. (*Engler* v. *Engler,* 313 Ill. 527; *Meighen* v. *Meighen,* 307 id. 306.) The bill of complaint in the suit for divorce specifically described the defendant's real estate, and its prayer was for such portion of the proceeds of that property as the court might deem necessary and proper for the maintenance of the complainant and the child, for an order restraining the disposition of the property and for general relief. The decree found the defendant to be the owner of the real estate described in the bill, made the alimony and solicitor's fees a lien or charge upon it, and, in default of payment within a specified time, ordered the issuancce of an execution and a sale of the real estate by the sheriff. Even if the decree directed the defendant to pay the alimony, there was the alternative provision by which, in the event of failure to make payment, the sum fixed was to be realized from the sale of the defendant's interest in the land. The decree in

respect to the lien for alimony and solicitor's fees and the provision for their satisfaction was similar to the ordinary form of a decree in a foreclosure suit. The alternative feature of the decree for divorce preserved its character as a decree *in rem. Crawford* v. *Nimmons,* 180 Ill. 143; *Shaffner* v. *Appleman,* 170 id. 281; *Bumgartner* v. *Hall,* 163 id. 136; *Roberts* v. *Flatt,* 142 id. 485; *Kirby* v. *Runals,* 140 id. 289.

Complaint is made by the plaintiffs in error that the decree of divorce awarded a fee of $50 to the complainant's solicitors. The allowance of a reasonable sum of money to the complainant to enable her to maintain her suit for divorce is authorized by the 15th section of the Divorce act. (Cahill's Stat. 1925, p. 935.) A solicitor's fee, when allowed in a divorce suit, should be ordered paid to the party and not to his or her solicitor. Assuming, however, that the decree erroneously made the fee payable to the complainant's solicitors instead of the complainant, the error is not one which can be made the subject of a collateral attack. The irregularity did not affect the court's jurisdiction to render the decree of divorce, and for that reason the decree continues to be binding upon the parties until it is reversed or modified in a direct proceeding for that purpose. The instant suit is a collateral attack upon that decree and the objection urged is not here available. *East St. Louis Lumber Co.* v. *Schnipper,* 310 Ill. 150; *Weberpals* v. *Jenny,* 300 id. 145; *People* v. *Omen,* 290 id. 59; *Nichols* v. *Caldwell,* 275 id. 520; *Kuzak* v. *Anderson,* 267 id. 609; *Miller* v. *Rowan,* 251 id. 344.

The decree of the circuit court is affirmed.

*Decree affirmed.*