AETNA LIFE INS. CO.

v.

DU ROURE et al.

CONNECTICUT GENERAL LIFE INS. CO.

v.

DU ROURE et al.

MANUFACTURERS LIFE INS. CO.

v.

DU ROURE et al.

UNION CENT. LIFE INS. CO.

v.

DU ROURE et al.

United States District Court
S. D. New York.
June 16, 1954.

William S. O'Connor, New York City, Bruce W. Manternach (of Robinson, Robinson & Cole), Hartford, Conn., of counsel, for plaintiffs Aetna Life Ins. Co., Connecticut General Life Ins. Co. and Manufacturers Life Ins. Co.

House, Grossman, Vorhaus & Hemley, New York City, Sidney Greenman, New York City, of counsel, for plaintiff Union Cent. Life Ins. Co.

Bernard Bernstein, New York City, Stanley D. Halperin, New York City, of counsel, for defendant Eleanor Patenotre du Roure.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendant J. P. Morgan & Co., Inc.

Franz Martin Joseph, New York City, pro se.

DIMOCK, District Judge.

These are four actions, each brought by a different insurance company, to interplead the claimants to the insurance proceeds of certain annuity policies issued to Raymond Patenotre, a citizen of France, since deceased. Plaintiffs move for summary judgment: dismissing the counterclaims interposed against them for interest by

defendants, Eleanor Patenotre du Roure, J. P. Morgan & Co., Inc., and Franz Martin Joseph, ancillary administrator of the estate of Raymond Patenotre; (2) discharging plaintiffs from any and all liability to defendants and the United States of America, intervener, on the insurance policies in suit; (3) making permanent and perpetual against all defendants and interveners, their agents and/or representatives, the temporary restraining order enjoining them from commencing or continuing any action against plaintiffs so far as it may affect or relate to the insurance policies in suit; (4) awarding to plaintiffs reasonable counsel fees, costs and disbursements. Defendants, Eleanor Patenotre du Roure and Franz Martin Joseph, oppose plaintiffs' motions and cross-move for summary judgment directing the plaintiffs to pay into the court registry amounts equal to interest at the rate of 6% per year or the average interest earned by plaintiffs on the proceeds of the policies in suit from the date of the death of Raymond Patenotre, June 19, 1951, to the dates on which plaintiffs paid the principal amounts of those proceeds into the registry of this court. Plaintiffs' motions are also opposed by J. P. Morgan & Co., Inc.

The same claimants are parties in each of the four actions. The same issues are raised in each action by these motions. The motions have been argued and submitted together and I therefore consider them together.

These interpleader actions were commenced and the insurance proceeds paid into the registry of this court on September 16, 1953, about two and a quarter years after the death of the insured on June 19, 1951. The central issues raised by these motions and cross-motions are whether, during this period, the insurance company · plaintiffs, by failing to take action, (1) wrongfully withheld payment of the in-surance proceeds, and subjected themselves to liability for wrongful detention of the funds [1] and forfeited the usual allowance of lawyers' fees accorded to totally disinterested involuntary stakeholders [2] or (2) were unjustly enriched.

The following events occurred prior to the institution of these suits. By letter, dated July 7, 1951, from defendant Alvord, each of the plaintiffs was notified of the death of Raymond Patenotre in Paris, France. The same letter noted that decedent's daughter, "Nellie Patenotre", was the named beneficiary of the annuity policies in suit and that the policies were under lien of the United States Government to cover certain asserted federal income tax deficiencies of Raymond Patenotre. The letter further requested the forms for documents required to make the proceeds available to the beneficiary in the event of the release of the lien. By letter dated July 9, 1951, from J. P. Morgan & Co., Inc., plaintiffs were notified of the death of Raymond Patenotre; that J. P. Morgan & Co., Inc., held the policies as escrow depositary under a 1949 agreement between the Alien Tax Division of the Bureau of Internal Revenue and Raymond Patenotre and his mother, Eleanor Patenotre, as security for payment of back income taxes when the amount due should be finally determined; that the policies were also subject to a lien of the Collector of Internal Revenue. That letter requested that plaintiffs make no disposition under the policies without giving J. P. Morgan & Co., Inc., an opportunity to be heard. By letter dated July 13, 1951, Mr. Bernstein, counsel for defendant Eleanor Patenotre du Roure, advised plaintiffs of the death of Raymond Patenotre and the survival of his daughter, Eleanor Patenotre du Roure, and demanded payment of all benefits due Madame du Roure under the policies. A photostatic copy of a power of attorney empowering Mr.

1. See New York Life Ins. Co. v. Cooper, D.C.S.D.N.Y., 76 F.Supp. 976, 979.

2. See New York Life Ins. Co. v. Bidoggia, D.C.D.Idaho, 15 F.2d 126.

Bernstein to act in behalf of Madame du Roure was enclosed. Plaintiffs notified Mr. Bernstein and J. P. Morgan & Co., Inc., of the existing claims against the policies including an attachment proceeding instituted in behalf of defendant Alvord on October 1, 1948, and advised them that plaintiffs could not run the risk of possible multiple liability until the tax lien and attachment were released and J. P. Morgan & Co., Inc., disclaimed interest. All claimants were supplied with proof of claim forms. Mr. Bernstein notified plaintiffs that none of the other claims could affect Madame du Roure's interest as named beneficiary and that plaintiffs would be held liable for failure to pay to her the proceeds to which she was entitled.

There was no further communication with plaintiffs after the summer of 1951 until June 15, 1953, when defendant Franz Martin Joseph notified plaintiffs that he had been appointed ancillary administrator c. t. a. of the New York estate of Raymond Patenotre on June 11, 1953. He shortly thereafter claimed the entire proceeds of the policies in behalf of the estate.

No proof of claim forms were completed and filed with plaintiffs except that Mr. Bernstein submitted as proof of death and relationship a photostatic copy of a document executed in France before a notary, "Acte de Notoriété". In July 1953, defendant du Roure instituted actions against plaintiffs in the Superior Court for Hartford County, Connecticut, to recover the sums due her as beneficiary plus interest.

There is no doubt that plaintiffs were not required to assume the risk of deciding for themselves which claims to recognize and in what proportions. That is the very result which interpleader is designed to guard against. Thus, the real issue is whether plaintiffs were justified in waiting two years before instituting interpleader actions.

Plaintiffs contend that they were unable, or at least reasonably believed that they were unable, to obtain jurisdiction over all the claimants in a single action. They allege that until Madame du Roure instituted her suits in Connecticut in July 1953 they were unaware that she had become a resident of New York, or indeed that she was in this country at all. All the documents submitted to them described her as a resident and citizen of France. Further, they urge that, until an ancillary administrator had been appointed to represent the decedent's estate in June 1953, no binding determination of the interest of the estate could be made. Finally, they contend that they could not have forced the United States to participate in an interpleader action. They argue that their best course and the only safe one was to wait for the United States itself to institute suit against them. Defendants say that actions speak louder than words and that plaintiffs did not wait for a suit by the government. Plaintiffs explain that by saying that they were forced to initiate the interpleader proceeding when the Connecticut suits were started.

Plaintiffs' argument about the Government as a party defendant would be more persuasive if they had attempted to induce the Government to join an earlier action. There is no evidence that any of the plaintiffs ever communicated with the Government agencies involved to that end. It would be enough, however, for plaintiffs to show that they could not obtain jurisdiction over the other necessary parties to the interpleader proceeding. There is considerable justification for their belief that Madame du Roure was beyond the reach of process and for their unwillingness to proceed without an official representative of the decedent's estate.

Defendants contend that there was no reason for any delay in the institution of the interpleader proceeding because, once the fund was deposited in court, the proceeding would become an in rem proceeding in which the insurance companies could have obtained their discharges against all the world. If that is true there was no occasion for wait-

ing for Madame du Roure to come to this country or for the appointment of an ancillary administrator for the estate of Raymond Patenotre.

The difficulty with this position is that interpleader is not an in rem proceeding. A binding judgment cannot be rendered against anyone over whom personal jurisdiction cannot be acquired. This was established in New York Life Ins. Co. v. Dunlevy, 241 U.S. 518, 36 S.Ct. 613, 60 L.Ed. 1140, where an insurance company obtained in Pennsylvania a rule for the interpleader of an insured under a matured policy, an alleged assignee of the policy and a judgment creditor of the assignee who sought to obtain the assignee's interest by garnishment. The insured and the judgment creditor appeared and the alleged assignee, who resided in California, defaulted. The insurance company then paid into court the amount due on the policy. The court adjudged that there was no valid assignment of the policy and the proceeds were paid to the insured. The alleged assignee then sued the insurance company and recovered a judgment which was affirmed in the Court of Appeals, 9 Cir., 214 F. 1, and United States Supreme Court. Professor Moore in commenting on the case in 3 Moore's Federal Practice, 2nd Ed., ¶ 22.06, says:

> "While a court may obtain in rem or quasi in rem jurisdiction over adverse claimants to a specific res, such as the corpus of a trust estate, a fund, securities, or other chattels, a person against whom in personam liability is asserted may not transform that liability into a res by depositing money into court and thus enable the court to proceed to an adjudication, by in rem or quasi in rem process, of the defendants' in personam claims against the plaintiff. This was the teaching of the Dunlevy case."

See also Hanna v. Stedman, 230 N.Y. 326, 130 N.E. 566.

Republic of China v. American Express Co., D.C.S.D.N.Y., 95 F.Supp. 740, affirmed, 2 Cir., 195 F.2d 230, and the same case on remand, D.C., 108 F.Supp. 169, perhaps look the other way but that case involved a bank account which, in deference to the popular conception, is often treated by the law as "money in the bank" rather than a mere chose in action.

In any event I feel bound by the Dunlevy case and hold that plaintiffs here could not have obtained their discharge as against Madame du Roure, the estate of Raymond Patenotre and the United States until they could have obtained jurisdiction over them all in one district. So far as the insurance companies knew, the first time that they could accomplish that was in July 1953. By September 1953 the insurance companies had paid the policy proceeds into court. There was no such delay as would warrant the imposition of interest at the legal rate. I do not find that plaintiffs' conduct was such as to give rise to liability for wrongful detention of the money in the amount of interest at the legal rate of 6%. See Illinois Bankers Life Assur. Co. v. Blood, D.C.N.D.Ill., 69 F.Supp. 705, 706; cf. Equitable Life Assurance Society v. McClelland, D.C.W.D.Mich., 85 F.Supp. 688, 695.

Nor should the insurance companies be charged with the interest which the fund has presumably earned in their hands. The theory of such a charge would be that they ought not to be allowed to profit from the misfortune of the person entitled to the fund who was delayed in obtaining it because of unfounded claims made by others. That theory, however, overlooks the fact that interest is not ordinarily payable on insurance benefits and that the insurance companies, in calculating their premiums, take into account the fact that the benefits will always be payable at a date more or less later than the actual accrual of liability. Cases of long custody of the fund like this make up

for the cases where payment is made within twenty-four hours. If one were to say that the postponement of payment here was so excessive as to entitle the beneficiaries to the interest earned, one would have to say that at some point interest would cease to be part of the contemplated earnings of the insurance company and become a windfall. That, however, is contrary to my hypothesis that every nonculpable delay is within the contemplation of the insurance company in establishing its premium rates.

It may well be that grossly culpable delay should subject the insurance companies to liability for interest at the legal rate and that less culpable delay should subject them to liability for interest at the rate earned by the fund but unless the delay is culpable there is no liability for interest of any kind.

The usual rule in strict interpleader is that the involuntary disinterested stakeholder is entitled to costs, including a reasonable attorney's fee, to be paid out of the fund brought into court. Globe Indemnity Co. v. Puget Sound Co., 2 Cir., 154 F.2d 249, 250. Except for services rendered and costs incurred in connection with the issue of interest on the fund, no special circumstances exist here which would prompt deviation from the usual practice. In connection with the interest question, however, plaintiffs do not appear as disinterested stakeholders, unaffected by the result. They are in the plight of the ordinary litigant who must foot his own bill no matter how righteous his cause. Therefore, the motion for costs in connection with that aspect of these motions is denied.

For the services other than in connection with the question of interest counsel for plaintiffs Connecticut Life Insurance Company, Aetna Life Insurance Company and The Manufacturers Life Insurance Company are awarded a fee of $4,000 and disbursements of $354.21 payable out of the deposited fund in the proportion of one-fourth for serv-

ices for each of the two companies first mentioned and one-half for services for the other.

For the services other than in connection with the question of interest counsel for plaintiff The Union Central Life Insurance Company are awarded a fee of $2,000 and disbursements of $309.29 out of the deposited fund.

The counterclaim for interest is dismissed, plaintiffs are discharged from liability to any and all defendants and to intervenor United States of America on the insurance policies in suit, the temporary restraining order is made permanent and counsel fees as above fixed are awarded. The motions for payment of interest into court are denied.