KENT ALAN LAIN, Adm'r of the Estate of Elsie H. Lain, Deceased, Plaintiff and Counterdefendant-Appellee, *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant and Counterplaintiff-Appellant.—(THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Counterplaintiff; MOHAMAD H. BAYZID, Counterdefendant.)

First District (2nd Division) No. 79-435

Opinion filed December 4, 1979.—Rehearing denied January 8, 1980.

Peterson, Ross, Schloerb & Seidel, of Chicago (J. Robert Geiman and Ellen J. Kerschner, of counsel), for appellant.

Fisher, Hassen & Fisher, of Chicago, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

This is an appeal from a summary judgment entered by the circuit court of Cook County in an interpleader action brought to determine the rightful claimant to the proceeds of a life insurance policy. Appeal is also taken from an order denying a motion to dismiss for failure to join a "necessary and indispensable" party.

The following issues are presented for review: whether the trial court abused its discretion when it failed to require the joinder of a "necessary and indispensable" party and whether the trial court erred when it entered summary judgment on the counterclaim of interpleader where one of the counterdefendants was served by publication.

For reasons hereinafter set forth, we reverse.

On August 23, 1933, the John Hancock Mutual Life Insurance Company (hereinafter referred to as Hancock) issued a policy on the life of William V. V. Lain (hereinafter referred to as the insured) in the amount of $50,000. Elsie H. Lain, his wife (hereinafter referred to as the insured's widow), was named as the beneficiary. On March 28, 1974, in Seville, Spain, the insured executed a document which listed eight life insurance policies, including the Hancock policy, and named as "sole beneficiary" thereof one Mohamad H. Bayzid (hereinafter referred to as Bayzid), a Syrian citizen who was then residing in Toremolinos (Malaga), Spain. In this document the insured declared that he was financially indebted to Bayzid and therefore granted to Bayzid, as security for the indebtedness, the right to assign, in any manner, the face value of the listed policies. On April 15, 1974, Bayzid forwarded a copy of this document to Hancock requesting confirmation of the change of beneficiary and of the amount of insurance provided by the policy.[1]

The insured died in Malaga, Spain, on July 29, 1974. The insured's widow died soon thereafter on December 12, 1974. On June 7, 1976, Kent Alan Lain (hereinafter referred to as Lain) was appointed administrator of the estate of the insured's widow authorizing him to take possession of and to collect the estate. On December 6, 1976, Lain filed suit against Hancock to recover the proceeds of the policy.[2]

---

[1] The record does not reflect whether Hancock in fact complied with this request. Nor does the record reflect whether the insured forwarded a copy of this document to Hancock.

[2] Lain's complaint made no mention of Bayzid, the purported change in beneficiary or the purported assignment of the policies.

Hancock filed a motion to dismiss Lain's complaint admitting liability for the net proceeds of the policy[3] but contending that it could not make payment of the proceeds to Lain because such payment, without a prior legal determination of Bayzid's claim, could expose Hancock to potential multiple liability. Hancock argued that the legal effect of the insured's assignment to Bayzid could not be determined, nor the proceeds disbursed, without Bayzid as a party to the litigation and that, therefore, Lain's complaint should be dismissed for failure to join a "necessary and indispensable" party or, in the alternative, that the proceedings should be stayed until such time as either Lain or Hancock could secure proper service of process upon Bayzid. The trial court denied Hancock's motion to dismiss.

Hancock filed an answer and a counterclaim of interpleader naming both Lain and Bayzid as counterdefendants. Hancock again admitted liability for the net proceeds of the policy to Lain but again asserted that it could not pay the proceeds of the policy to Lain because of the adverse claim of Bayzid. Hancock's counterclaim alleged that the net proceeds under the policy were $27,357.13 and requested leave to deposit said amount with the clerk of the court until such time as Bayzid could be personally served with process. The trial court granted Hancock leave to deposit the sum of $28,998.56 (net proceeds plus interest) with the clerk of the court on April 15, 1977, and said amount was, in fact, deposited on that date.

Hancock filed an affidavit of service by publication asserting that Bayzid resided out of State and that upon diligent inquiry Bayzid's place of residence could not be ascertained. Hancock alleged that it had employed independent investigators in Spain in an attempt to locate Bayzid. Service by publication was accomplished and a copy of the publication was mailed to Bayzid's last known address.

Lain filed a motion for summary judgment in the interpleader action alleging that Hancock had admitted its liability under the policy; that Hancock had deposited the net proceeds with the clerk of the court; that Hancock had effectuated service on Bayzid by publication; and that Lain's claim was uncontested because Bayzid failed to appear. Hancock replied to the motion for summary judgment arguing that Bayzid was a "necessary and indispensable" party to the litigation and that service by publication was insufficient to confer upon the trial court the *in personam* jurisdiction necessary to determine the rights of the parties to the disputed claim. Hancock further argued that if the trial court granted Lain's motion for summary judgment, then the trial court should fashion an equitable

---

[3] The net benefit payable under the Hancock policy, after deducting loans against the policy and computing interest and dividends, is $27,357.13.

remedy to protect Hancock from potential multiple liability. Hancock suggested that Lain should tender a "good and sufficient indemnity bond with surety conditioned upon [Lain's] agreement that if Mohamad Bayzid makes a claim or in the future is found to be the rightful assignee of said policy proceeds that [Lain] will protect and indemnify [Hancock] from dual liability."

On December 20, 1978, the trial court granted Lain's motion for summary judgment, finding that diligent, but unsuccessful, efforts were made to locate Bayzid; that the court had jurisdiction over the parties and subject matter of the litigation; that the purported change of beneficiary and assignment was legally ineffective in that it did not conform to the provisions of the policy; and that Lain was entitled to the proceeds of the policy. The trial court entered judgment by default against Bayzid and judgment in Lain's favor in the amount of $28,998.56. The judgment further provided that Hancock was "* * * fully released and discharged of and from any and all liability, claims, demands and the like whether or not heretofore raised, or in the future, existing or asserted by the counterdefendants, Kent Alan Lain, Administrator of the Estate of Elsie H. Lain, Deceased, and Mohamad H. Bayzid, and each of them" and that "[t]he counterdefendants [Lain and Bayzid] and their heirs, assigns, personal representative and successors in interest are permanently and perpetually restrained and enjoined from making, asserting or prosecuting any suit or administrative proceeding in any court, agency or forum whatsoever on account of the subject policies of insurance and the death of William V. V. Lain." Hancock appeals.

I.

The first issue presented for review is whether the trial court abused its discretion when it failed to require the joinder of Bayzid in Lain's action to recover the proceeds of the policy. Hancock contends that Bayzid is a "necessary and indispensable" party and that "basic notions of due process forbid the entry of a decree affecting the interest of [such] a party [who is] not before the court." Lain argues that Bayzid is not a "necessary and indispensable" party.

The Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, pars. 1-94) establishes the boundaries within which a court operates in determining whether a party is "necessary and indispensable." Section 24(1) provides:

"Any person may be made a defendant who, either jointly, severally or in the alternative, is alleged to have or claim an interest in the controversy, or in any part thereof, or in the transaction or series of transactions out of which the controversy arose, or whom it is necessary to make a party for the complete determination or

settlement of any question involved therein, or against whom a liability is asserted either jointly, severally or in the alternative arising out of the same transaction or series of transactions, regardless of the number of causes of action joined." (Ill. Rev. Stat. 1975, ch. 110, par. 24(1).)

Section 25(1) states:

"If a complete determination of a controversy cannot be had without the presence of other parties, the court may direct them to be brought in. If a person, not a party, has an interest or title which the judgment may affect, the court, on application, shall direct him to be made a party." (Ill. Rev. Stat. 1975, ch. 110, par. 25(1).)

Section 26 provides:

"No action shall be dismissed for misjoinder of parties, or dismissed for nonjoinder of necessary parties without first affording reasonable opportunity to add them as parties. New parties may be added and parties misjoined may be dropped by order of the court, at any stage of the cause, before or after judgment, as the ends of justice may require on terms which the court may fix." (Ill. Rev. Stat. 1975, ch. 110, par. 26.)

These sections are designed and intended to permit controversies to be determined according to substantial justice between the parties.

■■ "Parties to actions are divided into necessary or indispensable parties, and proper but not indispensable parties. Necessary parties are those without whom the court will not proceed to a decree even as to the parties before it. * * * '[P]ersons whose interests will necessarily be affected by any decree that may be rendered are necessary and indispensable parties.' " (*Jones v. Bryant* (1917), 204 Ill. App. 609, 617.) "Illinois, like many states, uses the term 'necessary' to define that group of parties regarded as indispensable and who must be joined." (*Clark v. Village of Milan* (1972), 3 Ill. App. 3d 569, 572, 277 N.E.2d 895.) Thus, in Illinois the nomenclatures "indispensable party" and "necessary party" appear to be used interchangeably and appear to be synonymous.[4] *First National Bank v. Screen Gems, Inc.* (1976), 40 Ill. App. 3d 427, 352 N.E.2d 285; *Lerner v. Zipperman* (1979), 69 Ill. App. 3d 620, 387 N.E.2d 946.

■■ A necessary or indispensable party is one whose presence in the suit

---

[4] The Federal court and many State courts distinguish between necessary and indispensable parties. "Proper" parties may but need not be joined. "Necessary" parties must be joined unless such joinder would destroy the jurisdiction of the court or the parties are not amenable to the court's jurisdiction, in which case they may be omitted.

"Indispensable" parties are persons who not only have an interest in the controversy but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience. See Comment, *Indispensable Parties: Holding Absentees Indispensable For The Sake Of Present Defendants*, 21 U. Chi. L. Rev. 286 (1954).

is required for any of three reasons: (1) to protect an interest which the absentee has in the subject matter of the controversy which would be materially affected by a judgment entered in his absence (Ill. Rev. Stat. 1975, ch. 110, par. 25(1); *National Bank v. S.N.H., Inc.* (1975), 32 Ill. App. 3d 110, 121, 336 N.E.2d 115); (2) to reach a decision which will protect the interests of those who are before the court (*Ragsdale v. Superior Oil Co.* (1968), 40 Ill. 2d 68, 71, 237 N.E.2d 492; see Comment, *Indispensable Parties: Holding Absentees Indispensable For The Sake of Present Defendants*, 21 U. Chi. L. Rev. 286 (1954)); or (3) to enable the court to make a complete determination of the controversy (Ill. Rev. Stat. 1975, ch. 110, par. 25(1).) Upon review of the issues presented by the pleadings, it can be argued that each of the above three reasons is present.

■■ We first consider whether the absent person has an interest in the subject matter of the controversy which would be materially affected by a judgment entered in his absence. If the answer to this query is yes, the person must be joined because under fundamental principles of due process, a court is without jurisdiction to enter a decree, order or judgment which affects a right or interest of someone not before the court. (*Lerner*, 69 Ill. App. 3d 620, 624; *Horn v. Horn* (1955), 5 Ill. App. 2d 346, 351-52, 125 N.E.2d 539.) It is under these circumstances that an order entered is entered without jurisdiction of a necessary and indispensable party and is therefore null and void. (*Lerner*, 69 Ill. App. 3d 620, 624; *People ex rel. Meyer v. Kerner* (1966), 35 Ill. 2d 33, 38, 219 N.E.2d 617; *Glickauf v. Moss* (1974), 23 Ill. App. 3d 679, 684, 320 N.E.2d 132.) This conclusion is mandated by section 25(1) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 25(1)), which provides that: "If a person, not a party, has an interest * * * which the judgment may affect, the court, on application, *shall* direct him to be made a party." (Emphasis added.)

■■ The pleadings contain the document purportedly executed by the insured. This document is under the seal of the consulate official of the United States. The insured in this document declared that he was financially indebted to Bayzid and therefore granted to Bayzid, as security for the indebtedness, the right to assign in any manner the face value of the listed policies. In this document the insured also named Bayzid as the "sole beneficiary" of the eight listed policies. Certainly this document created an interest within the meaning of section 25(1). The mere fact that the court might decide the issues in such a way that the absent party would have no interest in the subject matter of the litigation does not control. If the absent person might claim a substantial and present interest, then that person is entitled to be heard and to participate in the litigation of all questions affecting such interest. (*Oglesby v. Springfield Marine Bank* (1944), 385 Ill. 414, 52 N.E.2d 1000.) Under these circumstances, it appears that Bayzid did have an interest in the subject

matter of the controversy which would be materially affected by a judgment entered in his absence.

While the vast majority of necessary and indispensable party cases involve factual situations in which the failure to join the absentee would harm him alone, we must also consider the interests of the present parties to the suit and the need for a complete determination of the controversy.

The record discloses that Hancock has vigorously argued that unless the adverse claimants to the policy proceeds are before the court, the interests of Hancock will not be protected because it may be subject to potential multiple liability. Hancock has also argued that a complete determination of its obligation to pay the proceeds of the policy cannot be made without the presence of Bayzid. Under these circumstances it appears that the interest of the present parties to the suit and the need for a complete determination of the controversy require the presence of Bayzid.

This court recently opined in *Lerner* that "the requirement of joinder of necessary [and indispensable] parties is absolute and inflexible." (*Lerner*, 69 Ill. App. 3d 620, 625.) Applying the foregoing principles to our finding that Bayzid's interest in the subject matter of the controversy was adversely affected by the judgment, buttressed by our findings that his presence was necessary for a complete determination of the controversy and that the interests of the parties presently before the court were adversely affected by Bayzid's absence, we are of the opinion that the trial court abused its discretion in failing to require the joinder of Bayzid.

## II.

The second issue presented for review is whether the trial court erred when it entered summary judgment in favor of Lain on the counterclaim of interpleader because Bayzid was served with process by publication. Hancock contends that the summary judgment is void because the trial court was without jurisdiction over the person of Bayzid. Lain argues that jurisdiction over the person of Bayzid is unnecessary because the interpleader action is an action *in rem*. We will first discuss whether the instant interpleader action is an *in personam* or an *in rem* action. We will then discuss whether the service effectuated in the instant case was adequate to confer upon the trial court the jurisdiction necessary to adjudicate this cause.

## A.

■ Interpleader is not necessarily an *in rem* proceeding. (*New York Life Insurance Co. v. Dunlevy* (1916), 241 U.S. 518, 521, 60 L. Ed. 1140, 36 S. Ct. 613; *Metropolitan Life Insurance Co. v. Dumpson* (S.D.N.Y. 1961), 194 F. Supp. 9, 11; *Aetna Life Insurance Company v. Du Roure* (S.D.N.Y.

1954), 123 F. Supp. 736, 740.) A binding judgment cannot be rendered against anyone over whom personal jurisdiction cannot be acquired. (*Dunlevy*, 241 U.S. 518, 521, 60 L. Ed. 1140, 36 S. Ct. 613; *Dumpson*, 194 F. Supp. 9, 11; *Du Roure*, 123 F. Supp. 736, 740.)

> " '* * * a person against whom in personam liability is asserted may not transform that liability into a res by depositing money into court and thus enable the court to proceed to an adjudication, by in rem or quasi in rem process, of the defendants' in personam claims against the plaintiff. This was the teaching of the *Dunlevy* case.' "

(*Du Roure*, 123 F. Supp. 736, 740.)

In *Cordner v. Metropolitan Life Insurance Co.* (S.D.N.Y. 1964), 234 F. Supp. 765, 770, an action to determine the rightful claimant to insurance proceeds, the court held that insurance proceeds did not constitute "property within the district" which would confer in rem jurisdiction upon the court under 28 U.S.C. §1655.[5] The *Cordner* court cited with approval the rationale of *Hanna v. Stedman* (1921), 230 N.Y. 326, 130 N.E. 566. The *Hanna* court opined that an insurer incurs a personal liability to some beneficiary for a given sum of money; and that the claim of the beneficiary is a personal claim on a debt, not a right in or a lien upon specific property. The *Hanna* court stated:

> "The defendant [insurer] under its certificates had incurred a personal liability to some one for given sums of money. That obligation constituted a personal claim against it. As a means of paying this claim it collected moneys by levying an assessment upon its members. The moneys thus collected, however, were not even kept in a separate fund but were deposited in a general account called the beneficiary fund wherefrom I apprehend all claims of this character were paid. * * * The claim of the

---

[5] 28 U.S.C. §1655 (1976) provides:

"In an action in a district court to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district, where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain.

Such order shall be served on the absent defendant personally if practicable, wherever found, and also upon the person or persons in possession or charge of such property, if any. Where personal service is not practicable, the order shall be published as the court may direct, not less than once a week for six consecutive weeks.

If an absent defendant does not appear or plead within the time allowed, the court may proceed as if the absent defendant had been served with process within the State, but any adjudication shall, as regards the absent defendant without appearance, affect only the property which is the subject of the action. * * *

Any defendant not so personally notified may, at any time within one year after final judgment, enter his appearance, and thereupon the court shall set aside the judgment and permit such defendant to plead on payment of such costs as the court deems just."

certificate holder remained a personal one and not a right in or lien upon specific property.

\* \* \*

An action or proceeding *in rem* has for its subject specific property which is within the jurisdiction and control of the court to which application for relief is made. The action proceeds against such specific property and its object is to have the court define the rights therein of various and conflicting claimants. Jurisdictional control of the property affords the basis for service beyond its jurisdiction upon those who may be interested in its disposition. The result of such an action is a judgment which operates upon the property and which has no element of personal claim or personal liability. *There is no authority so far as we are aware holding that an action of interpleader is one in rem, but exactly the opposite view has been entertained.* N. Y. Life Ins. Co. v. Dunlevy, 241 U.S. 518, 521, 522." (Emphasis supplied.) (*Hanna*, 230 N.Y. 326, 333-35, 130 N.E. 566, 568-69.)

Nor does depositing the funds with the court change the nature of the proceeding from *in personam* to *in rem*.

"\* \* \* The defendant [insurer] fearing that it might be subjected to double or triple payment of one claim commenced its action in interpleader wherein it named all of the conflicting claimants as defendants. In that action it did not even supply the superficial appearance of an action *in rem* by bringing into court and depositing the moneys to which conflicting claims were being made. But even if it had this would not have changed in any manner the nature of the action. The requirement that the plaintiff in such an action shall so bring into court the moneys which are in dispute is a requirement imposed by a court of equity as a condition of relieving the debtor from further obligation for costs or otherwise while the conflicting claimants litigate the question which shall have judgment against it upon the claim admitted to be due." *Hanna*, 230 N.Y. 326, 334, 130 N.E. 566, 568-69.

Our supreme court has also cited with approval the rationale of *Hanna*. (*Austin v. Royal League* (1925), 316 Ill. 188, 194, 147 N.E. 106.) In *Austin* the court opined that "[a] proceeding to determine who is entitled to the proceeds of a benefit certificate [issued by a fraternal beneficiary society], even where the fund is paid into court, is not a proceeding *in rem*." (*Austin*, 316 Ill. 188, 194.) The *Austin* court reasoned at page 194:

"Can it be said that a non-resident having an interest in the benefit certificate issued to Brookover must take notice of suits brought against the society in different States where the society can be sued and can be forced to appear and defend his rights upon mere

constructive notice? It seems clear the answer must be in the negative. The claim of the heirs against the society is a personal one."

■■ In the case at bar there is no *res* before the court. The claim of the purported beneficiary is not the *res*. (*Austin*, 316 Ill. 188, 193.) Such a claim may be litigated in any State, so far as Hancock is concerned, where Hancock might be served with process through its proper agents. (*Austin*, 316 Ill. 188, 193.) The property of Hancock is not before the court, nor is it involved in the suit. (*Austin*, 316 Ill. 188, 193.) Nor is the policy the *res* upon which the court is acting. The policy is only evidence of Hancock's obligation, and as previously indicated, the right to enforce this obligation is transitory.[6] (*Austin*, 316 Ill. 188, 194.) We therefore conclude that the instant interpleader action is an in personam proceeding. In so concluding we note that our research has revealed no case which has held that competing and adverse claims to the proceeds of an insurance policy could proceed to an adjudication by *in rem* process. Nor has Lain directed our attention to such a case.[7]

In his motion to cite additional authority as well as in his brief, Lain appears to propose that this court discard the characterization of interpleader actions as either in rem or in personam, and adopt in its stead a "due process approach to jurisdiction." Lain directs our attention to *United States v. Estate of Swan* (5th Cir. 1971), 441 F.2d 1082. A reading of this case discloses that its holding is quite specific and not applicable to the case at bar.

> "* * * Where the stake in an interpleader action is a fund comprising the assets of an estate, and the claimant is the executrix who has absented herself from the state, converted an asset of the estate to her own use, and rendered herself inaccessible to personal service, the procedures of Section 1655 as applied by the court below are constitutionally sufficient." (*Swan*, 441 F.2d 1082, 1086.)

We note that were we to apply Lain's proposed approach, the result would not differ from that reached above. However, we find *Austin* to be controlling and therefore we follow its dictates.

### B.

■■ We now address the question of whether the service of process effectuated in the instant case was sufficient to confer upon the trial court the *in personam* jurisdiction over Bayzid necessary to proceed to an

---

[6] One of the distinguishing characteristics of an *in rem* action is its local rather than transitory nature.

[7] Lain cites several cases for the proposition that only *in rem* jurisdiction is necessary in the case at bar. None of these cases concern insurance proceeds and are easily distinguishable. As such they do not merit further mention or discussion.

adjudication of both his and Lain's claim to the proceeds of the policy. The record reflects that Bayzid was served pursuant to section 14 of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 14.) This section provides in part:

> "Whenever, in any action affecting property or status within the jurisdiction of the court, including an action to obtain the specific performance, reformation, or rescission of a contract for the conveyance of land, or in any action to revive a judgment, plaintiff or his attorney shall file, at the office of the clerk of the court in which his action is pending, an affidavit showing that the defendant resides or has gone out of this State, or on due inquiry cannot be found, or is concealed within this State, so that process cannot be served upon him, and stating the place of residence of the defendant, if known, or that upon diligent inquiry his place of residence cannot be ascertained, the clerk shall cause publication to be made in some newspaper published in the county in which the action is pending."

Section 14, by its own terms, is limited to in rem actions. The law is well settled that a purely personal decree is not binding against a nonresident who is notified of the proceeding by publication and who does not appear. *Wilson v. Smart* (1927), 324 Ill. 276, 155 N.E. 288; *Killebrew v. Killebrew* (1947), 398 Ill. 432, 75 N.E.2d 855.

Thus, even though Hancock strictly complied with the provisions of section 14, the trial court was without the requisite in personam jurisdiction over Bayzid to adjudicate the adverse claims of Lain and Bayzid to the proceeds of the policy.[8]

Based upon the foregoing, we reverse the order of the circuit court of Cook County.

Reversed.

STAMOS, P. J., and HARTMAN, J., concur.

---

[8] At oral argument it was suggested that a reversal of the trial court's judgment would prevent a disposition of the issues in this case until the statute of limitations would ultimately resolve the controversy, or that the parties could adopt the device of a surety bond. It appeared that Lain was prepared to provide a bond predicated upon the judgment of the trial court. This offer was not acceptable to Hancock. We are not unaware of the "catch 22" dilemma involved but suggest that this is a matter for legislative clarification.