John Joseph PAWLIK *v.* Geneva Josephine PAWLIK

CA 80-538                                        620 S.W. 2d 310

Court of Appeals of Arkansas
Opinion delivered September 2, 1981

*Mark Cambiano*, for appellant.

*Howard C. Yates*, for appellee.

Tom Glaze, Judge. This appeal involves the Uniform Child Custody Jurisdiction Act and is the result of divorce and child custody actions filed in Illinois and Arkansas. The appellant, John Pawlik, first filed his action in McHenry County Circuit Court in Illinois, and appellee, Geneva Pawlik, subsequently filed a similar action in Conway County Chancery Court in Arkansas. The Conway County Chancery Court held that the Illinois court failed to obtain personal jurisdiction of the appellee and entered an order awarding permanent custody to appellee. The appellant contends on appeal that (1) the Arkansas court erred in its decision that the Illinois court had no jurisdiction over appellee and (2) since the Illinois action was pending before appellee filed her action, the Arkansas court erred in exercising jurisdiction.

The relevant facts are not in dispute. The parties and their two minor children lived in Illinois until 1979. The parties separated in October, 1979, and the appellee and the children moved to Conway County, Arkansas, in March, 1980. In May, 1980, appellant filed the Illinois action, and since he did not know the whereabouts of appellee, appellant obtained service by publication. In June, 1980, appellee filed her action in Conway County, Arkansas. Appellant entered his special appearance in the Arkansas action, contending that the Illinois court had jurisdiction of the parties and subject matter and requested the Arkansas court to dismiss appellee's action for want of jurisdiction. On August 1, 1980, the Arkansas court rejected appellant's contention and entered a temporary custody order awarding appellee the parties' children.

On August 28, 1980, the Illinois court entered a final judgment, granting appellant a divorce, denying alimony and awarding personal property to the respective parties,

and awarding custody of the children to appellant. On September 5, 1980, appellant petitioned to register the Illinois decree in the Arkansas action and requested the Arkansas court to recognize the Illinois judgment and to dismiss the Arkansas action. The Arkansas court held the Illinois judgment was not entitled to full faith and credit as it related to custody of the parties' children, and entered an order granting permanent custody to the appellee.

Contrary to appellant's contention, we believe the Arkansas court was correct in holding that service by publication was not sufficient to vest the Illinois trial court with jurisdiction to decide the child custody issue. Both Arkansas and Illinois have enacted the Uniform Child Custody Jurisdiction Act, and, under the Act and the facts of this case, either state may have acquired jurisdiction of this custody action between the parties. Each party (parent) has a legally protected personal interest in their children's custody and the due process clause will not permit them to be cut off by a court which has no jurisdiction over the objecting parent. See, R. Leflar, *American Conflicts Law*, § 243 (3d ed. 1977); *May* v. *Anderson*, 345 U.S. 528 (1953), and *Cooper* v. *Cooper*, 229 Ark. 770, 318 S.W. 2d 587 (1958). The primary issue before us is whether the Illinois court acquired personal jurisdiction of the appellee.

In the instant case, appellant obtained constructive service on appellee through publication in Illinois in accordance with Section 14 of the Civil Practice Act (Ill. Rev. Stat. 1975, Ch. 110 Par. 14). However, in the case of *Lain* v. *John Hancock Mutual Life Insurance Company*, 79 Ill. App. 3d 264, 398 N.E. 2d 278, 34 Ill. Dec. 603 (1979), the Illinois Appellate Court held that Section 14, by its own terms, is limited to *in rem* actions. The Illinois court stated further:

> ... The law is well settled that *a purely personal decree* is *not* binding against a nonresident who is notified of the proceeding by publication and who does not appear. *Wilson* v. *Smart* (1927), 324 Ill. 276, 155 N.E. 288; *Killebrew* v. *Killebrew* (1947), 398 Ill. 432, 75 N.E. 2d 855. [Emphasis supplied.]

Here, appellee was residing with the children in Arkansas, and appellant sought to deprive appellee of her personal right to possessory custody of the parties' children. Since appellant notified appellee of the Illinois proceeding by publication under Section 14 of the Illinois Civil Practice Act, we conclude this was not sufficient notice to vest the Illinois court with the personal jurisdiction necessary to award appellant the parties' children.

Next, we must decide whether the service and notice obtained by appellant in the Illinois action might be authorized under the Uniform Child Custody Jurisdiction Act.[1] As noted earlier, Arkansas and Illinois have adopted the Uniform Child Custody Jurisdiction Act, and each has, with one deviation, enacted the provision concerning the manner in which notice must be served on persons outside the state before the state can exercise jurisdiction over the non-resident persons. Interestingly enough, the Arkansas law permits notification by publication if directed by the court and in cases where other means of notification are ineffective. The Illinois law does not provide for publication. See Ark. Stat. Ann. § 34-2705 (Supp. 1981), and Ill. Rev. Stat. 1979, Ch. 40, Par. 2106. Both Arkansas and Illinois, however, adopted the Uniform Child Custody Jurisdiction Act's provision that authorized the notice to be served in the manner prescribed by the law of the place in which the service is made. Ark. Stat. Ann. § 34-2705(a)(2), and Ill. Rev. Stat. 1979, Ch. 40, Par. 2106(b)(2).

Since the Uniform Child Custody Jurisdiction Act as adopted in Arkansas appears to permit notification by publication, we must look to the Arkansas law to determine if the service by publication obtained by appellant in Illinois complies with Arkansas constructive service.[2] We find that it does not.

---

[1]Like Arkansas; Illinois has adopted a long-arm statute which requires personal service on persons outside the state. Since the appellant attempted to effect service only under Section 14 of the Illinois Civil Practice Act, it is not necessary for us to consider whether appellant could have acquired jurisdiction under the Illinois long-arm law.

[2]The constitutionality of notice by publication is not raised by the parties and it is unnecessary for us to consider this constitutional question

Rule 4(f) and 4(i) of the Arkansas Rules of Civil Procedure provide for service upon defendants whose whereabouts are unknown and for defendants who are served by mail or warning order and who have not appeared. Basically, Arkansas law requires a warning order to be published in a newspaper for four (4) consecutive weeks, and Illinois law requires only three (3) such publications. More importantly, Arkansas law requires a copy of the complaint and warning order be mailed, by return receipt requested, to the defendant, and an attorney *ad litem* must be appointed to defend the defendant and to inform him of the action. These procedures are not required under Illinois law, nor did the publication procedures followed by the appellant remotely comply with the Arkansas law.

We conclude that the Illinois court never acquired jurisdiction over the appellee under Illinois or Arkansas law to empower it to decide the issue of custody. Therefore, we hold the Arkansas trial court was not required to give full faith and credit to the Illinois custody order nor defer jurisdiction to the Illinois court action under the Uniform Child Custody Jurisdiction Act.

We affirm.

Affirmed.

Cooper, J., concurs.

Mayfield, C.J., dissents.

Melvin Mayfield, Chief Judge, dissenting. I am troubled by both the approach and result of the majority opinion.

Both Arkansas and Illinois have adopted the Uniform Child Custody Jurisdiction Act. The general purposes of the act, set out in its very first section, include:

---

in reaching a decision in this case. See, *Commissioner's Note*, Uniform Child Custody Jurisdiction Act (U.L.A.) § 5, and *In re Marriage of Blair*, 42 Colo. App. 270, 592 P. 2d 1354 (1979).

(1) avoiding jurisdictional competition and conflict with courts of other states;

(2) promoting cooperation with courts of other states so that a custody decree will be rendered in the state which can best decide in the interest of the child; and

(3) assuring that custody litigation will take place in the state where evidence concerning the child's care, training, and protection is most available and that a court *will decline to exercise jurisdiction* when the child and his family have a closer connection with another state.

To help accomplish those purposes, section 3 of the act provides for certain jurisdictional requirements to be met before a court makes a child custody determination. *As far as this case is concerned* that section of our act, Ark. Stat. Ann. § 34-2703 (Supp. 1981), provides that jurisdiction (1) is in the home state of the child or (2) in some other state *if* it is in the home state of the child for that state to assume jurisdiction because the child and one of his parents have a significant connection with the state and there is available substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

The home state is defined in the act as the state in which the child, immediately preceding the time involved, lived with his parents or parent for at least six consecutive months. It is not in dispute that Illinois is the home state. The parties were married there in 1975 and separated in 1979 and the appellee and her children had lived in Arkansas only three months when she filed suit.

Section 6 of the act, Ark. Stat. Ann. § 34-2706 (Supp. 1981), provides that a court of a state shall not exercise its jurisdiction *if* at the time of filing the petition a proceeding concerning the custody of the child is pending in another state exercising jurisdiction substantially in conformity with the act, *unless* the other state stays its proceedings because the second state is a more appropriate forum or for other reasons.

Everyone agrees that the Illinois suit was filed before the Arkansas suit. Moreover, the father filed a pleading in the Arkansas suit saying that the suit was pending in Illinois and asking that the Arkansas court follow its own act and defer to Illinois. This was filed and heard *before* the Arkansas court had made even a temporary custody order. But the Arkansas court refused to defer to Illinois and failed to follow section 34-2706(c), which provides that if a court is informed during the course of the proceeding that a proceeding concerning the custody of the child is pending in another state before the court assumed jurisdiction, it shall stay the proceeding and communicate with the other court to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections 19 through 20 of the act.

It seems clear to me that the failure of the Arkansas court to stay its proceedings and allow Illinois to decide which state was the more appropriate forum was contrary to both the letter and the spirit of the act and will surely be called to the attention of a court in some other state if ever a citizen of this state finds himself there with the situation reversed.

The Uniform Act was promulgated in 1968 by the National Conference of Commissioners on Uniform State Laws. With the enactment of Act 91 of 1979, Arkansas became the twenty-ninth state to adopt the act. See 3 UALR Law Journal, *Third Annual Survey of Arkansas Law*, 145, 239 (1980). The need and purpose of the Act is described in the Commissioners' Prefatory Note, 9 Uniform Laws Annotated 111-114.

> The judicial trend has been toward permitting custody claimants to sue in the courts of almost any state, no matter how fleeting the contact of the child and his family was with the particular state. . . . Also, since the United States Supreme Court has never settled the question of whether the full faith and credit clause of the Constitution applies to custody decrees, many states have felt free to modify custody decrees of sister states almost at random. . . .

Under this state of the law the courts of the various states have acted in isolation and at times in competition with each other. . . .

In this confused legal situation the person who has possession of the child has an enormous tactical advantage. . . . It is not surprising then that custody claimants tend to take the law into their own hands, that they resort to self-help in the form of child stealing, kidnapping or various other schemes to gain possession of the child. . . .

To remedy this intolerable state of affairs . . . uniform legislation has been urged in recent years to bring about a fair measure of interstate stability in custody awards.

By its action today, this court is contributing to the situation just described by thwarting the solution offered in the legislative act. And why are we doing this? Apparently we say Illinois did not get proper service on the appellee. Of course, she knew and the Arkansas court knew that the suit had been filed in Illinois because the appellant filed a motion in the suit here and told them about it. I find it rather incongruous that this was not sufficient notice of the suit in Illinois but sufficient to constitute the entry of an appearance in Arkansas and to subject appellant to the jurisdiction of our court.

Or it may be that the majority opinion's reference to *in personam* jurisdiction means something was needed in addition to actual notice of the suit in Illinois. If the citation to *May* v. *Anderson*, 345 U.S. 528 (1953), suggests there must be personal jurisdiction of a parent in order to affect the custody status of the child, I would reply first that the question in that case concerned habeas corpus, not child custody, as Justice Frankfurter pointed out in his concurring opinion. Also, I find it hard to disagree with this statement in the dissent of Justice Jackson:

Custody is viewed not with the idea of adjudicating rights *in* the children, as if they were chattels, but rather

with the idea of making the best disposition possible for the welfare of the children. To speak of a court's "cutting off" a mother's right to custody of her children, as if it raised problems similar to those involved in "cutting off" her rights in a plot of ground, is to obliterate these obvious distinctions.

In oral argument, I understood appellant's attorney to say that footnote 30 in the opinion of *Shaffer* v. *Heitner*, 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977) means that personal jurisdiction is not necessary to affect adjudications of status. Whatever footnote 30 means, the case traces the history of *in personam* jurisdiction from the 1878 case of *Pennoyer* v. *Neff*, 95 U.S. 714, 24 L. Ed 565, and its requirement that a defendant be personally served in the state before a court of that state can exercise jurisdiction over his person or his personal duties or obligations. The history discussed shows the case development from the power concept of *Pennoyer* to the minimum contacts theory of *International Shoe Co.* v. *Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945), to the holding in *Shaffer* that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." So, even if personal jurisdiction of a parent is necessary, that can now be accomplished by meeting the jurisdictional requirements of the Uniform Act (this will satisfy the minimum contacts theory discussed in *Shaffer*) and by following the applicable statutory provisions with regard to service by publication. While actual notice could be required, service in the state *where the court acts* is not necessary in order to have *in personam* jurisdiction that will satisfy due process and entitle a judgment to full faith and credit.

In this case, jurisdictional requirements were met and actual notice was given. The Arkansas court should have deferred to the "home state" of Illinois where the first suit was filed. I would reverse and remand with directions to register and enforce the Illinois decree as to custody.