JACK LERNER *et al.*, Plaintiffs-Appellees, *v.* WILLIAM M. ZIPPERMAN, Defendant-Appellant.

First District (2nd Division)   No. 77-1868

Opinion filed March 20, 1979.—Rehearing denied April 17, 1979.

Robert F. Greer, of Chicago (Philip J. Rock and William Paul Jones, of counsel), for appellant.

Liebling, Hauselman & Miller, Ltd., of Chicago (Marvin Miller, of counsel), for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This appeal involves the questions of whether plaintiffs' motion for summary judgment was properly granted and whether the trial court erred in failing to join an indispensable party.

On August 17, 1971, the defendant, an attorney, and Wayne Peters (Peters), an attorney and real estate businessman, entered into a $75,000 sale contract for a portion of defendant's law practice and the Libuszowski Insurance Agency (agency) located in Chicago, Illinois.[1] Simultaneously Peters gave defendant a note for $7,500[2] and a trust agreement to his house as security collateral. Although the contract was to be performed within two years according to defendant's testimony, Peters made a payment of $2,500 to defendant in 1974.[3] The insurance agency, the trust agreement, and the note are still in defendant's possession.

According to plaintiff Smith's testimony, he was told by Peters that defendant's agency was for sale. Thereafter, Smith, a real estate businessman, contacted the remaining plaintiffs and a Joe Goldman and collected a $7,500 check from plaintiff Hefter made payable to defendant, a $7,500 check from plaintiff Varon made payable to Smith, and a check from Joe Goldman of an unknown amount.

Sometime later, Smith, his associate Ben Katz, plaintiffs Lerner and Frankel, and Peters met with defendant, at which time plaintiffs Lerner and Frankel each gave defendant a $7,500 check, and Smith gave him Hefter's $7,500 check and a cashier's check for $22,500 which constituted plaintiffs Smith, Varon, and Goldman's contributions. Smith testified that he assumed that plaintiff Winer had given his $7,500 check to Peters.

---

[1] Defendant also agreed to assist Peters in securing the manager's position at the Kordecky Savings and Loan Association. According to defendant, Peters assumed this position in 1971.

[2] Although defendant originally stated that Peters' note was for $7,500, he later testified, "That's right" in response to plaintiffs' attorney's query, "So there is a $75,000 note?"

[3] Defendant testified that he had received $52,500 altogether from Peters, leaving $22,500 owed. Assuming that plaintiffs paid $45,000 of this $52,500, we note an apparent discrepancy in defendant's testimony as to the amount contributed by Peters.

According to Smith, Peters and Winer were to become 40% owners of the agency and the remaining plaintiffs were to become 60% owners.[4]

Smith further stated that plaintiffs had not made an agreement with defendant, that his demands for the return of the money made in 1973, 1974, and 1975 had gone unheeded, and that he had first learned that the sale had not been completed after Mr. Libuszowski's death, which, according to defendant, occurred in 1976.

Plaintiffs Varon and Hefter both testified that they had been initially approached about the purchase of the agency by plaintiff Smith. Varon stated that he had made his check payable to Smith. Although Hefter testified that Smith had collected his check, he had made his check payable to defendant at Smith's request. Varon testified that he had attended a meeting at which defendant was present, but stated that he could not recall what was discussed or whether Peters was present. However, Varon further testified that he had spoken to Peters on two occasions subsequent to this meeting. Hefter not only knew Peters, but also knew that Smith had talked with him concerning the purchase of the agency. Hefter also testified that he had never spoken to defendant concerning the sale. Both Varon and Hefter knew that Smith had demanded the return of the money; however, neither knew that the sale had not been completed until approximately two years before their depositions were taken in June of 1977.

Although plaintiff Winer could not recall either who had requested his $7,500 check made payable to defendant or to whom it was delivered, he unequivocally stated that defendant had not requested it. He further testified that he had attended a meeting held in 1970 or 1971 at which defendant and some of the other plaintiffs were present. Although he subsequently saw defendant on several occasions and attended several other meetings with plaintiffs concerning the purchase, Winer stated that he did not discuss the sale of the agency with defendant at any time after the aforementioned meeting. Although he did not testify as to when he first learned that the sale had fallen through, Winer also knew that Smith had demanded that defendant return the money.

Defendant admitted in his deposition that he had received several checks totaling $45,000 and deposited them in his account. However, he further testified that he had received these checks exclusively from Peters pursuant to their agreement of August 17, 1977, of which the plaintiffs were not a part. According to defendant, the documentation of this agreement is in Peters' possession. Defendant maintained in his deposition, as he does here, that because Peters still owes him $22,500, he

[4] We note that although Mr. Goldman was said to have paid for an interest in the agency, plaintiff Smith did not indicate that he was to acquire an interest in it. Mr. Goldman is not a party to this suit.

is not obligated to either Peters or plaintiffs to return the money he received. Defendant further stated that plaintiffs did not demand the return of the money until the complaint in this suit was filed.

Plaintiffs' motion for summary judgment, filed without supporting affidavits, contended that there were no issues of fact as to defendant's failure to complete the transaction, his failure to return the money, and his misapplication and conversion thereof.

Defendant's motion and affidavit in response reiterated that he had received money only from Peters pursuant to their agreement, and that he had no agreement with the plaintiffs. Defendant further asserted there were genuine issues of material fact as to with whom the parties had agreements, and as to whether plaintiffs had made a reasonable demand for the return of the money.

Based on the foregoing pleadings and testimony, the trial court granted plaintiffs' motion for summary judgment. In the hearing on defendant's motion to vacate the summary judgment, defendant asserted that Peters was a necessary party, and that granting summary judgment in his absence was improper. The trial court denied defendant's motion to vacate without response to the defendant's objection. Because we are of the opinion that defendant's objection to Peters' nonjoinder was well taken, we need only address this issue.

## I.

■■ A necessary party is one whose presence in the suit is required for any of three reasons: (1) to protect an interest which the absentee has in the subject matter of the controversy which would be materially affected by a judgment entered in his absence (Ill. Rev. Stat. 1977, ch. 110, par. 25(1); *National Bank v. S.N.H., Inc.* (1st Dist. 1975), 32 Ill. App. 3d 110, 121, 336 N.E.2d 115); (2) to reach a decision which will protect the interests of those who are before the court (*Ragsdale v. Superior Oil Co.* (1968), 40 Ill. 2d 68, 71, 237 N.E.2d 492; see Comment, *Indispensable Parties: Holding Absentees Indispensable For The Sake Of Present Defendants*, 21 U. Chi. L. Rev. 286-293 (1954)); or (3) to enable the court to make a complete determination of the controversy (Ill. Rev. Stat. 1977, ch. 110, par. 25(1)). Upon our review of the issues presented by the pleadings and evidence (*Tri-Mor Bowl, Inc. v. Brunswick Corp.* (5th Dist. 1977), 51 Ill. App. 3d 743, 746, 366 N.E.2d 941), we find each of these reasons present. Wayne Peters should therefore be joined as a party.

## A.

■■ We first consider whether the absent person has a natural private right or property interest which necessarily will be (or was) affected by the judgment. If the answer is in the affirmative, the person must be joined

because under fundamental law and due process principles, a court is without jurisdiction to enter a decree, order, or judgment which affects a right or interest of someone not before the court. (*Horn v. Horn* (3d Dist. 1955), 5 Ill. App. 2d 346, 351-52, 125 N.E.2d 539.) It is under these circumstances that the rule that an order entered without jurisdiction of indispensable parties is null and void has been applied. (*People ex rel. Meyer v. Kerner* (1966), 35 Ill. 2d 33, 38, 219 N.E.2d 617; *Glickauf v. Moss* (1st Dist. 1974), 23 Ill. App. 3d 679, 684, 320 N.E.2d 132.) It is for this reason that section 25(1) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 25(1)) provides that: "If a person, not a party, has an interest * * * which the judgment may affect, the court, on application, *shall* direct him to be made a party." (Emphasis added.)

It is uncontroverted that Peters entered into two separate contracts with plaintiff Smith and defendant concerning the ownership of the insurance agency. The first partnership agreement between Peters and Smith, on behalf of all of the plaintiffs, provided that Peters and Winer were to become 40% owners of the agency, and the remaining five plaintiffs were to acquire a 60% interest. The second agreement between Peters and defendant provided that Peters would acquire not only the insurance agency but also a portion of defendant's law practice upon the payment of $75,000. Pursuant to this latter contract of sale Peters gave defendant a note and a trust agreement to his house which defendant still holds.

By virtue of these sequential transactions, Peters first acquired an interest in both the agency and defendant's law practice. (See *Trust Co. v. Lewis Auto Sales, Inc.* (1st Dist. 1940), 306 Ill. App. 132, 134, 28 N.E.2d 300; 32 Ill. L & Prac. *Sales* §276 (1957).) His agreement with plaintiffs left unaffected his interest in defendant's law practice and merely diminished his interest in the agency to 20%. The trial court's order compelling defendant to return the money to plaintiffs not only totally rescinds the Peters-Smith agreement, but also substantially impairs Peters' position in relation to his agreement with defendant. Under these circumstances, we are of the opinion that Peters had an interest in the subject matter of the controversy which was materially affected by the judgment. We therefore find that Peters should have been joined, and the trial court erred in proceeding on the merits in his absence. See *First National Bank v. Screen Gems, Inc.* (1st Dist. 1976), 40 Ill. App. 3d 427, 352 N.E.2d 285.

B.

While the vast majority of indispensable party cases deal with factual situations in which the failure to join the absentee would harm him alone, the interests of the present parties to the suit and the need for a complete determination of the controversy must be considered as well. (See Ill.

Rev. Stat. 1977, ch. 110, par. 25(1).) Therefore, even assuming that the trial court's decision that Peters had no interest in the subject matter of the controversy had been proper, this fact alone would not have controlled in determining whether the presence of such party was essential. *Oglesby v. Springfield Marine Bank* (1944), 385 Ill. 414, 426, 52 N.E.2d 1000.

The record in this case is devoid of terms, or conditions and contingencies, if any, of either of the agreements that Peters entered into with the parties to this suit. As noted previously, the documentation of the Peters-defendant agreement is in Peters' possession. It appears as though Peters negotiated the entire transaction. Under these circumstances, we find that the operation of, or even the existence of, these terms or conditions could not be fairly determined unless Peters was properly before the court. (See *First National Bank*, at 432.) Unless a fair determination of these facts can be made, we can only speculate at this time as to the substantive property rights of the parties and of Peters. We do not find it inconceivable that Peters' testimony as to his negotiations and the terms of the agreements would reveal that defendant has been subjected to a liability more direct than is warranted by all of the facts. Therefore, we are of the opinion that the presence of Peters was necessary for a complete determination of the controversy, and that the trial court erred in not requiring his joinder on this basis.

## II.

Section 26 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 26) provides that:

> "New parties may be added and parties misjoined may be dropped by order of the court, at any stage of the cause, before or after judgment, as the ends of justice may require and on terms which the court may fix."

This provision has been construed to apply only to necessary parties (*Keehner v. A. E. Staley Manufacturing Co.* (5th Dist. 1977), 50 Ill. App. 3d 258, 267, 365 N.E.2d 275) and to vest broad discretion in the trial court to add such new parties (*Hamer v. Mahin* (2d Dist. 1973), 13 Ill. App. 3d 51, 57, 299 N.E.2d 595). Although an objection to the nonjoinder of necessary parties made at the final hearing is not favorably received (*Theodorou v. Community Builders, Inc.* (1st Dist. 1972), 6 Ill. App. 3d 277, 280, 285 N.E.2d 474), the requirement of joinder of necessary parties is absolute and inflexible. Therefore, it is the duty of the trial court and of this court to enforce the principle of law requiring joinder of necessary parties *sua sponte* as soon as it is brought to their attention, even if no objection is made by a party litigant. As said by our supreme court in *Oglesby*, at page 423: "The objection may be made by a party at the hearing or on appeal or error, and the court will, upon its own motion,

take notice of the omission and require the omitted party to be made a party." (See also *Tri-Mor Bowl, Inc.*, at 746; *Hobbs v. Pinnell* (1959), 17 Ill. 2d 535, 536, 162 N.E.2d 361; *First National Bank*, at 431; *National Bank*, at 121.) However, where the ends of justice require that persons be joined after judgment, such persons must have been necessary to the original action in that they had a direct interest in the subject matter of the lawsuit which was adversely affected by a judgment entered in their absence. *Zieler v. Village of Oak Lawn* (1st Dist. 1974), 23 Ill. App. 3d 752, 756, 320 N.E.2d 86.

■■ The defendant in this case raised the issue of Peters' nonjoinder in the hearing on his motion to vacate the summary judgment entered for plaintiffs. Applying the foregoing principles to our finding that Peters' interest in the subject matter of the controversy was adversely affected by the judgment, buttressed by our finding that his presence was necessary for a complete determination of the controversy, we are of the opinion that the trial court abused its discretion in failing to require his joinder. Accordingly, we reverse and remand with directions to take the appropriate steps to obtain jurisdiction over Wayne Peters. Ill. Rev. Stat. 1977, ch. 110A, par. 366(a)(2).

Reversed and remanded.

STAMOS, P. J., and PERLIN, J., concur.