GEORGE F. TSUETAKI *et al.*, Plaintiffs-Appellees, v. NICK N. NOVICKY, Defendant-Appellant.

First District (3rd Division)   Nos. 81—1727, 81—2857 cons.

Opinion filed December 7, 1983.

McDougall, Hersh & Scott, of Chicago (Keith V. Rockey and Michael A. Hierl, of counsel), for appellant.

Epton, Mullin, Segal & Druth, Ltd., of Chicago (Gerald S. Geren, Ronald A. Snadler, and Mary F. Stafford, of counsel), for appellees.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Following a bench trial, defendant, Nick N. Novicky (Novicky), was found to have breached his employment contract with plaintiffs, George F. Tsuetaki and Fused Kontacts of Chicago, Inc. (Tsuetaki). The trial court also found that modifications of the contract were void for duress, fraud and lack of consideration. An order was entered granting the injunctive relief sought by Tsuetaki, and ordering Novicky to return sums of money received pursuant to the contract modifications.

On appeal Novicky asserts (1) the injunction is overly broad, permanently precluding him from disseminating any and all information relating to the manufacturing of gas permeable contact lenses, thus effectively precluding him from pursuing his career; (2) the modifications of his employment contract were valid and not obtained by duress or fraud; (3) the order of the circuit court is void for failure to join an indispensable party to the litigation; and (4) the circuit court erred in dismissing Novicky's petition for rehearing based on section

72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72), now codified as section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1401).

At trial, Tsuetaki testified that he was a doctor of optometry doing business as Fused Kontacts, Inc. The corporation makes contact lenses for sale to doctors, labs and patients. In August 1978, Novicky, a chemist, stated to Tsuetaki that he had developed a new composition for gas permeable contact lenses that he wanted to sell to him. Tsuetaki signed a security agreement providing that he would not analyze materials received from Novicky at that time, but that, if a business arrangement were reached, all technology would become the property of Tsuetaki.

Subsequently, Tsuetaki and Novicky met with Tsuetaki's patent attorney regarding the new composition for gas permeable contact lenses. Although Novicky had previously been employed as a chemist by Syntex Opthalmics, Inc., and/or Arapahoe Chemicals, Inc. (collectively Syntex), a manufacturer of gas permeable contact lenses, Novicky maintained that he had developed the material offered to Tsuetaki after leaving Syntex and while working on his master's degree at the University of Denver. Novicky represented that his invention did not infringe any patent owned by Syntex.

Tsuetaki and Novicky entered into an employment agreement for the period from September 1, 1978, to August 31, 1982, providing that Novicky would be employed to develop material and techniques useful for the production of contact lenses and related items. He was to be paid an annual salary of $22,500 adjusted annually to reflect increases in the cost of living and a discretionary bonus. In addition, in exchange for a present assignment of all rights to any inventions previously made by Novicky, he was to receive: (1) $10,000 for each patent application covering developments made by Novicky for use in making contact lenses and related items, approved by Tsuetaki and filed in the United States Patent Office; and (2) an additional $10,000 when and if a United States patent was issued on the application.

In return, Novicky assigned all inventions, developments and improvements to be made in the future to Tsuetaki during the life of the agreement plus six months thereafter. Novicky also agreed to keep the subject of his work "confidential" as long as such information had value to Tsuetaki or was still confidential.

The employment contract was signed on August 31, 1978, and Novicky began work in a laboratory provided by Tsuetaki. Novicky made rods of material from which his employer cut discs to make contact lenses. Tsuetaki tested the lenses by wearing them himself. He

would then suggest to Novicky changes that might be made to improve the lenses. Eventually they developed a material which they called "GN-1," and patent application serial number 6725 was filed in Novicky's name covering the GN-1 material. Pursuant to the agreement, Novicky was paid $10,000 at filing and $10,000 when the patent was officially allowed.

After the 6725 application was filed, Novicky filed two more applications for other inventions of which Tsuetaki was advised and which Novicky agrees belong to Tsuetaki. Novicky also filed three additional patent applications for other inventions, two of which he refers to as "private patents." Novicky testified that Tsuetaki was uninterested in these two patents and freely signed a statement in January 1980 waiving all rights to them. Tsuetaki, however, testified that he signed the waiver under duress and fraud and without consideration. The alleged duress was a backlog of orders which could only be filled by the production of the rods by Novicky. The alleged fraud was Novicky's assurance that the two private patents were inferior to, and thus not competitive with, those assigned to Tsuetaki. However, following expert testimony, the trial court found that the private patents were competitive with GN-1. The court also found that Tsuetaki had signed the waiver under duress since the alternative was a complete shutdown of operations because of the stoppage of the production of the rods by Novicky.

The employment contract was further modified in May 1980, when Tsuetaki agreed to pay Novicky a royalty of $1 per rod for all GN-1 material produced. Tsuetaki testified that this agreement, too, was the product of duress. Novicky had started a production slowdown. Tsuetaki allegedly had a backlog of orders for 42,000 GN-1 blanks or 1,800 rods and no personnel other than Novicky to produce them. At approximately the same time Novicky also requested and received from Tsuetaki an additional $3,000 for preparation of a United States Food and Drug Administration file seeking approval of the GN-1 material. Again, Tsuetaki testified that he acted under duress. In June 1980, Novicky tendered his resignation to Tsuetaki.

The trial court found that Novicky had violated his employment agreement and on January 13, 1981, entered judgment for Tsuetaki, ordering Novicky to repay the $3,000. The judgment order also included an injunction which provided:

> "(4) NICK N. NOVICKY is hereby enjoined from disclosing to any person or entity the contents in whole or part of any laboratory books and records dealing with the experiments, research, progress and development of the technology involved in

the manufacture of contact lenses, including, but not limited to, those which could, would or did lead to the filing of letters patent. NICK N. NOVICKY is also enjoined from otherwise disseminating matters confidential to GEORGE TSUETAKI and/ or FUSED KONTACTS OF CHICAGO."

On October 24, 1980, Syntex had requested permission to monitor the circuit court proceedings. Tsuetaki and Novicky objected. The trial court denied the request. On November 19, 1980, Syntex filed suit against Tsuetaki and Novicky in the United States District Court for the Northern District of Illinois alleging that Tsuetaki had wrongfully obtained Syntex' trade secrets from Novicky.

On February 18, 1981, Novicky filed a post-trial motion seeking modification of the judgment of January 13, 1981. Novicky contended that the injunction in paragraph 4 was overly broad and that it was anomalous since Novicky was not precluded from manufacturing contact lenses using confidential information and processes belonging to Tsuetaki, as long as that information or process was not disclosed to any other person or entity.

Tsuetaki filed a petition for rule to show cause on February 11, 1981, contending that Novicky had improperly conferred with an attorney for Syntex regarding the case in Federal court in which Novicky was appearing *pro se*. In response to the petition for rule to show cause and in support of its own cross-petition for a stay of the injunction entered by the circuit court on January 13, 1981, Syntex submitted a memorandum stating that Novicky had agreed not to disclose or use contact lens-related trade secrets learned during the five years he had worked for Syntex. While Novicky worked for Syntex he had allegedly developed methods of making contact lenses, generating a patent disclosure executed on December 15, 1977, by three Syntex employees. Although this patent belonged to Syntex, it was allegedly substantially similar to the patent awarded to Tsuetaki in the January 13, 1981, judgment. Further, the judgment required Novicky to transfer to Tsuetaki documents allegedly belonging to Syntex and drafted by Novicky during his employment there. Syntex requested the trial court to enter a protective order staying certain paragraphs of its order pending the decision of the Federal court regarding the rights of the parties.

On February 24, 1981, Syntex filed a special and limited appearance to contest personal jurisdiction of the State court. On July 10, 1981, the trial court held that Syntex, by filing its cross-petition and its response to the petition for rule to show cause, had made a general appearance, thereby submitting itself to the jurisdiction of the

trial court. The court, further, denied Syntex' petition for a protective order. Novicky's post-trial motion was also denied.

Novicky appeals the January 13, 1981, and July 10, 1981, decisions of the circuit court. In addition, he filed a petition pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72) now codified as section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1401), on the basis of testimony given by Tsuetaki and by Fused's comptroller, in the Federal case against both Tsuetaki and Novicky. Novicky asserted in his petition that (1) evidence given by Tsuetaki and the comptroller in the Federal case directly contradicted testimony relied upon by the circuit court in its resolution of the case in the circuit court; and (2) evidence in the Federal case established that Syntex was an indispensable party which should have been joined to the circuit court action. Tsuetaki filed a motion to strike the section 72 petition. The court granted the motion to strike. Novicky also appeals this order.

I

We first address the issue of the dismissal of the section 72 petition which alleged that the evidence given by Tsuetaki in the circuit court was contradicted by subsequent depositions given by Tsuetaki in the Syntex case in the Federal court. Tsuetaki and his comptroller, Bill Vranas (Vranas), testified in the trial of the instant case in support of Tsuetaki's claim of coercion and duress that Tsuetaki had not been able to fill his orders for lenses during the summer of 1980 because of Novicky's refusal to produce sufficient material and his lack of other personnel to manufacture the material. However, according to their depositions in the Federal case, not only had Tsuetaki been able to fill his orders on July 3, 1980, and July 15, 1980, from material made by Novicky before his resignation, but Vranas testified further that sales were in fact "bad" during the summer of 1980 and that when Tsuetaki resumed production without Novicky he still had an inventory of over 1,000 "buttons" produced by Novicky. This is inconsistent with Vranas' and Tsuetaki's testimony in the circuit court.

Concerning Novicky's so-called "private patents," Tsuetaki testified in circuit court in support of his allegation that Novicky had coerced him into waiving his interest in those patents:

"I asked Mr. Novicky, what do you want me to do. What do I have to do in order that we can have production and satisfy our needs? *** I had no choice but to sign this."

However, in his deposition in the Federal case filed by Syntex, Tsuetaki stated that about six months after the commencement of the

employment agreement Novicky had offered him the private patents for $10,000. Tsuetaki stated that he simply did not wish to accept the offer. Again this contradicts the testimony in the instant case.

Further, regarding the alleged duress resulting from Tsuetaki's complete dependence on Novicky for the production of lenses due to a lack of other qualified employees, the Federal deposition revealed that Tsuetaki had actually opened a second laboratory, Paragon Research Corporation, before Novicky resigned. In the instant case, on the other hand, Tsuetaki had testified that he had "no desire" to open another laboratory facility and that Novicky would not have permitted him to hire an additional chemist.

In addition, in the circuit court, counsel for Tsuetaki referred to Novicky as having "extorted" the $3,000 received for preparation of the United States Food and Drug Administration file, claiming that the typing bills in conjunction with the preparation of the file had amounted to only $54. The actual bills, disgorged in the Federal court proceeding, totaled approximately $1,400.

In the section 72 petition Novicky also alleged that Syntex was an indispensable party to the circuit court case, based on Syntex' assertions in the Federal case that it had a proprietary interest in the subject matter of this case. Novicky's section 72 petition was supported by his affidavit and memorandum.

Tsuetaki filed a motion to dismiss the section 72 petition alleging that it was insufficient at law to state a claim for relief. The circuit court entered an order striking the section 72 petition on the basis that the newly discovered evidence could have been presented at the trial if Novicky had exercised due diligence.

First, we note that for purposes of a section 72 petition, as in other pleadings, failure to answer the allegations of the petition constitutes an admission. (*Campbell v. Kaczmarek* (1976), 39 Ill. App. 3d 465, 350 N.E.2d 97.) Therefore, we must accept Novicky's allegations as true and the only issue before this court is whether the petition and its supporting affidavit adequately set forth facts to show that the trial court abused its discretion in denying the petition. (*Colletti v. Schrieffer's Motor Service, Inc.* (1962), 38 Ill. App. 2d 128, 186 N.E.2d 659.) A court of review may disturb a trial court's decision regarding a section 72 petition only if it finds that the court abused its discretion. *Stallworth v. Thomas* (1980), 83 Ill. App. 3d 747, 404 N.E.2d 554.

The criteria for a successful section 72 petition are well established. A party must demonstrate: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim

to the court in the original action; (3) that, through no fault of his own, an error was made or a defense or claim was not raised; and (4) due diligence in filing the petition. In addition, the petition must set forth specific factual allegations in support of each element in order to prevail. 83 Ill. App. 3d 747, 404 N.E.2d 554.

The purpose of a section 72 petition is to permit the vacation of judgments where facts exist which, had they been known to the trial court, would have precluded the judgment. (*Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 357 N.E.2d 518; *People v. Hinton* (1972), 52 Ill. 2d 239, 287 N.E.2d 657, *cert. denied* (1973), 410 U.S. 940, 35 L. Ed. 2d 606, 93 S. Ct. 1404.) It must be a fact that influenced the court in its judgment but about which the court was in error. Further, the petitioner must demonstrate that through no fault or neglect of his own the error of fact could not have been discovered at the time of the original proceeding. (*People v. Jennings* (1971), 48 Ill. 2d 295, 269 N.E.2d 474; *People v. Stewart* (1978), 66 Ill. App. 3d 342, 383 N.E.2d 1179.) Section 72 is an appropriate remedy where the omission of a valid defense was caused by fraud, duress or excusable mistake. It is not intended to relieve a party of the consequences of his own negligence or mistake. *Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 357 N.E.2d 518; *People v. Stewart* (1978), 66 Ill. App. 3d 342, 383 N.E.2d 1179.

■ It is our opinion that Novicky has alleged specific facts in his petition, recounted above, which could have led the circuit court to a different decision regarding the agreement between him and Tsuetaki, as well as the modifications of that agreement, had they been known at the time of judgment. The cornerstone of Tsuetaki's case was his claim of economic duress produced by Novicky's alleged refusal to produce sufficient material to fill Tsuetaki's orders for contact lenses. It was on this basis that the trial court held the modifications of the employment agreement to have been made under duress and therefore unenforceable. Depositions taken during discovery in the Syntex Federal case—the testimony of Tsuetaki himself as well as that of Bill Vranas, the two principal witnesses in the action against Novicky—refute this. Thus, we believe that Novicky has presented a meritorious defense and the initial requirement for a successful section 72 petition has been satisfied.

In his petition Novicky stated, in support of the due diligence requirement, that these facts were not brought out at trial because, as an individual, he was economically precluded from the scope of discovery available to Syntex, a corporation. While this may not be sufficient to establish due diligence in itself, we note that the equitable

powers of the court are invoked in the consideration of section 72 petitions (*Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 190 N.E.2d 348), and that section 72 relief is granted to achieve justice, and that a liberal construction is used to achieve that end (27 Ill. 2d 609, 190 N.E.2d 348; *Electrical Wholesalers, Inc. v. Silverstein* (1977), 47 Ill. App. 3d 689, 365 N.E.2d 375). The requirement of due diligence need not be rigidly enforced when fraud or unconscionable behavior is shown. (*Department of Public Works & Buildings v. O'Hare International Bank* (1976), 44 Ill. App. 3d 934, 358 N.E.2d 1308; see *Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 236 N.E.2d 719.) We believe that the apparently false testimony given by Tsuetaki and Vranas may fairly be characterized as fraud.

Further, it is our opinion that Tsuetaki's self-serving testimony, depending upon the court in which he had been called to testify or to give a deposition, constituted unconscionable behavior. Since it can hardly be attributed to any fault on Novicky's part that Tsuetaki and Vranas did not testify truthfully, we conclude that the requirement of due diligence has been satisfied and that the trial court abused its discretion in dismissing Novicky's section 72 petition. Thus, the judgment of the trial court is vacated and this matter is remanded for further proceedings.

## II

We next address the issue of Syntex as a necessary party. We first note that we do not believe that Syntex should be joined on the basis of the section 72 petition, since as Syntex' former employee any fault for the failure to join Syntex originally must be attributed to Novicky. Relief pursuant to section 72 is not designed to remedy the consequences of a party's own negligence. *Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 357 N.E.2d 518.

■ However, it is well established that if a complete determination of a controversy cannot be had without the presence of a party, or if a person, not a party, has a property interest which a judgment may affect, the court on application shall direct him to be made a party. (Ill. Rev. Stat. 1979, ch. 110, par. 25(1), now codified as section 2—406(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—406(a)); *Lain v. John Hancock Mutual Life Insurance Co.* (1979), 79 Ill. App. 3d 264, 398 N.E.2d 278; *Lerner v. Zipperman* (1979), 69 Ill. App. 3d 620, 387 N.E.2d 946.) This is required by fundamental principles of due process, since a court is without jurisdiction to enter a decree or judgment which affects a right or interest of someone not before that court. (69 Ill. App. 3d 620, 387 N.E.2d 946.)

The requirement of joinder of necessary parties is absolute and inflexible, and therefore an appellate court has a duty to enforce the principle of law requiring the joinder of parties *sua sponte* as soon as it is brought to its attention. 69 Ill. App. 3d 620, 387 N.E.2d 946.

■ In our opinion due process requires that Syntex be joined to this action upon remand. Syntex is clearly a necessary party since it is manifest from the record as well as the parties' briefs on appeal that, as Novicky's former employer, Syntex has claimed a property interest in the same alleged trade secrets and patented processes that are the subject matter of the controversy between Novicky and Tsuetaki. A judgment enjoining Novicky from the use or dissemination of this information, while allowing Tsuetaki to proceed freely, could infringe the rights of Syntex, as could a contrary disposition. Therefore, we hold that upon remand Syntex must be joined as a necessary party.

### III

■ Finally, since the issue is likely to arise again upon remand, we address the scope of the injunction against Novicky. An injunction should be reasonable and should only be as broad as is essential to safeguard the rights of the plaintiff. (*Village of Wilsonville v. SCA Services, Inc.* (1981), 86 Ill. 2d 1, 426 N.E.2d 824.) Furthermore, as a general rule, an injunctive order should not be broader in scope than the relief sought in the pleadings. (*Cook County v. Rosen & Shane Wine & Spirits, Inc.* (1978), 58 Ill. App. 3d 744, 374 N.E.2d 838; *Schlicksup Drug Co. v. Schlicksup* (1970), 129 Ill. App. 2d 181, 262 N.E.2d 713.) We agree with Novicky that the apparently perpetual injunction entered by the trial court essentially enjoining him from disclosing any and all information relating to the manufacture of contact lenses, including but not limited to information which could, would or did lead to the filing of applications for letters patent, is too broad. The granting of the injunction is reversed. To aid in the enforceability of any possible future injunction, the trial court should delineate with greater specificity precisely which information may not be disclosed or used, and for what period of time.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded for a new trial.

Reversed and remanded.

McNAMARA, P.J., and RIZZI, J., concur.