*In re* MARRIAGE OF JANET GURIN, Petitioner-Appellant, and WILLIAM GURIN, Respondent-Appellee.

First District (1st Division)   No. 1—89—2300

Opinion filed April 8, 1991.

Diane Shelley, of Chicago, for appellant.

Pascucci & Associates, of Chicago (Nancy C. Pascucci, of counsel), for appellee.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Petitioner Janet Gurin obtained a judgment of dissolution of marriage which incorporated an oral marital settlement agreement that Janet sought to modify on the grounds of fraud, or alternatively, mistake of fact. The court denied the motion to modify and Janet appeals.

Petitioner Janet Gurin and respondent William Gurin were married on February 14, 1978. As a result of the union, two children were born, William Gurin, Jr., and Jennifer Gurin. On July 21, 1988, Janet filed a petition for dissolution of marriage and a petition for domestic violence order of protection. The petition for domestic violence order of protection supported by affidavit was heard on that same day as an emergency. An *ex parte* order of protection was entered restraining William from further physical abuse, harassment or intimidation against Janet and requiring him to pay Janet $439 per week for child support and maintenance. Janet, who retained custody of the two minor children, had no employment outside the home.

On March 30, 1989, prior to commencement of the hearing on Janet's petition for dissolution of marriage, the parties entered into negotiations to settle certain matters between themselves during

which William stated that he was then unemployed. During the prove up on that same day, William testified and provided evidence that he was then receiving unemployment compensation. The parties agreed that William would pay no less than 25% of his net income to Janet as child support for the children. He stated that although $50 represented 25% of his weekly net income, he agreed to pay Janet $75 per week. The parties further agreed that William would retain the marital residence and pay all of the marital debts. Because the marital residence was in foreclosure and 10 months of past-due mortgage payments were due to be paid within 30 days, William was given the option of conveying the house back to the lender to avoid a judgment against the parties or to seek bankruptcy relief under chapter 13.

On May 8, 1989, William filed an emergency petition for enforcement of the March 30 agreement, requesting, among other things, that Janet immediately turn over possession of the marital residence and an order directing the agreed visitation of the children. He attached proof of filing a bankruptcy petition and a draft of the settlement agreement. On May 18, 1989, William signed the judgment of dissolution of marriage and it was subsequently signed by Janet. On May 22, 1989, the court entered the judgment of dissolution of marriage.

On June 20, 1989, William filed a motion requesting that a judge's deed be entered by the court since Janet failed to quitclaim her interest in the marital property in accordance with the agreement. On July 12, 1989, the court executed a judge's deed conveying the marital residence to William.

In the interim, on June 21, 1989, Janet had filed a motion pursuant to section 2—1301 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1301), to modify the judgment with respect to property distribution and child support based on her belief that William had made intentional misrepresentations to the court for the purpose of fraudulently inducing her into the settlement agreement. The motion also referred to article VII of the judgment, which states:

> "Both the Wife and Husband hereby agree that they have disclosed to the other directly or through their attorneys any and all property, assets, choses in action and cash that they have any interest in *as of the date of execution of this agreement*, other than those assets acquired by legacy, descent or acquired prior to marriage." (Emphasis added.)

The affidavit attached to Janet's motion to modify stated that she only agreed to accept $75 per week as support because of her husband's representations that his only source of income was unemployment compensation. Furthermore, she would not have agreed to con-

vey the marital residence to William if she had known William was employed and that she could have received additional support. Janet also attached to her petition a copy of William's bankruptcy petition filed on April 17, 1989, which stated that he had been employed for one week with net earnings of $492 per week and his gross income for 1988 was $31,000. Janet's motion to modify was heard on July 25, 1989, with both parties testifying. Her motion was denied, and it is from this order that Janet appeals.

On appeal, Janet contends that the trial court erred by failing to find the settlement agreement either unconscionable on its face or improper because it was obtained by fraud or at least based on a mistake of fact. It is Janet's position that given William's testimony during the July 25 hearing, which revealed earlier discussions with his employer about the time he would commence employment, coupled with his signing the judgment on May 19 that stated he had made full disclosure of assets and property but which did not reflect his current status of employment, the settlement agreement must be vacated and set aside. Moreover, William failed to submit to Janet 25% of his net income for child support immediately upon employment but led the court and Janet to believe he was still receiving unemployment compensation. On the basis of the following, we reverse the trial court's order denying Janet's motion to modify the judgment as it pertains to property distribution and child support.

■ Section 502 of the Illinois Marriage and Dissolution of Marriage Act (hereinafter Act) provides in relevant part:

"[A]ttendant upon the dissolution of their marriage, the parties may enter into a written or oral agreement containing provisions for disposition of any property owned by either of them, maintenance of either of them and support, custody and visitation of their children.

(b) The terms of the agreement, except those providing for the support, custody and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, *** that the agreement is unconscionable." (Ill. Rev. Stat. 1987, ch. 40, pars. 502(a), (b).)

Thus, section 502(b) authorizes a court to vacate or set aside a settlement agreement entered pursuant to the Act.

Under prior Illinois law, the standard for court approval of settlement agreements was fairness and reasonableness. However, in the case of *In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 929-30, 428 N.E.2d 1005, this court enunciated:

"Section 502(b) of the Illinois Marriage and Dissolution of Marriage Act [citation] has changed Illinois law with respect to determining the validity of separation agreements. [Citation.] Pursuant to section 502(b) the terms of a separation agreement, except those providing for the support, custody and visitation of children, are binding upon the court unless it finds that the agreement is *unconscionable. However, this section does not eliminate many of the traditional grounds for setting aside settlement agreements, including fraud,* coercion and violation of any rule of law, public policy or morals. [Citations.] (Emphasis added.)"

We have reviewed the record below and conclude that the trial court had a sufficient basis to set aside the settlement agreement on either the traditional ground of fraud or the statutory ground of unconscionability. However, before we proceed to address the issues of fraud and unconscionability, we turn our attention to a matter raised by William with regard to when the judgment was rendered. William maintains that the parties first negotiated a valid settlement agreement that was entered into the record on March 30, at the prove up. He asserts that at that time neither Janet, the attorneys, the presiding judge, nor William believed that the oral agreement was unfair. Moreover, at the time the agreement was entered, William was unemployed. He maintains that during the two-month period between March 30, 1989, and May 22, 1989, when the actual judgment was entered, Janet changed her mind and decided that the agreement was not fair since William then had a job.

William argues that a "judgment is the sentence of the law pronounced by the court on matters contained in the record." (See 49 C.J.S., *Judgments* §1 *et seq.* (1947).) Moreover, the judgment is considered as rendered at the time the court pronounces its judgment and does not depend upon the actions of the clerk in recording or expanding the judge's minutes. (*People ex rel. Schwartz v. Fagerholm* (1959), 17 Ill. 2d 131, 161 N.E.2d 20; *Casati v. Aero Marine Management Co.* (1976), 43 Ill. App. 3d 1, 356 N.E.2d 826.) William contends that in *In re Marriage of Carlson* (1989), 186 Ill. App. 3d 635, 542 N.E.2d 760, judgment was entered without the signature of the respondent since the reduction of the agreement to writing was not a "condition precedent" to its entry. Thus, he asserts that the inference of the *Carlson* opinion is that the parties here signed the judgment solely for the purpose of acknowledging that the judgment conforms to the transcript of proceeding held on the date of the prove up.

What concerns us about William's argument is the implication that the trial court was limited to a review of the conditions and circumstances surrounding the negotiations of the agreement which transpired on March 30, 1989, rather than those conditions that existed following the prove up and leading up to May 22, 1989, when the court signed the judgment incorporating the agreement. However, his reasoning is flawed for two reasons.

■■ ■ First, William's reliance on the *Carlson* opinion is misplaced. Supreme Court Rule 272 (107 Ill. 2d R. 272), which governs when judgment is entered, provides in pertinent part that "[i]f at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by him, *** the judgment becomes final only when the signed judgment is filed." Our courts have interpreted the rule to mean that proceedings are in a state of abeyance until written judgment is filed and bare announcement of final judgment cannot be enforced. (*In re Marriage of Black* (1987), 155 Ill. App. 3d 52, 507 N.E.2d 943.) Judgment is entered at the time judgment is entered of record. Thus, as here, judgment was not rendered until the written judgment was filed.

■ Second, putting aside William's argument as to the rendition of judgment even if he had cited authority for the proposition that the trial court, when determining the propriety of a settlement agreement is limited to a review of the circumstances as they exist when the agreement is negotiated, we would find such a rule inapplicable here where the grounds urged for setting aside the agreement are the same as those that could be raised for setting aside or reopening a judgment. For instance, section 510(a) of the Act provides that provisions relating to property disposition are not modifiable or revocable unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of the State. (See Ill. Rev. Stat. 1987, ch. 40, par. 510(a).) Moreover, in *In re Marriage of Reines* (1989), 184 Ill. App. 3d 392, 540 N.E.2d 394, the court held that a section 2—1401 petition (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) was a proper method by which to attack the validity and fairness of a property settlement agreement incorporated in the judgment of dissolution.

■■ Our courts have continually found that a property settlement agreement could be set aside and vacated where it resulted from fraud or coercion by either party. (*Guyton v. Guyton* (1959), 17 Ill. 2d 439, 161 N.E.2d 832; *Crawford v. Crawford* (1976), 39 Ill. App. 3d 457, 350 N.E.2d 103; *Wilke v. Wilke* (1977), 51 Ill. App. 3d 438, 366 N.E.2d 973.) William responds that Janet has failed to present clear and con-

vincing evidence in support of her allegation of fraud. (*Turzynski v. Libert* (1970), 122 Ill. App. 2d 352, 359, 259 N.E.2d 295.) We disagree.

We believe that the record supports Janet's contention that William deliberately concealed his prospects of impending employment and his actual employment with the intent to deceive on his part. Fraud may consist in the concealment of what is true as well as in the assertion of what is false where the concealment is shown to have been done with the intention to deceive under circumstances creating an opportunity and duty to speak. (*Lagen v. Lagen* (1973), 14 Ill. App. 3d 74, 302 N.E.2d 201.) William contends that he was unemployed at the time the settlement agreement was entered and that he had no duty to speak once he became employed. Moreover, the agreement only placed an affirmative obligation upon him to inform Janet at the beginning of the year of any change in his employment, and he unilaterally increased his support payments some time after he commenced employment to represent 25% of his net pay. These assertions may suffice to explain William's behavior regarding child support; however, they do not lessen or negate the harm inflicted upon Janet and the children as to the matter of the marital residence.

Fraud is the intentional misrepresentation of a material fact or the concealment of a fact which induces a party to rely on that misrepresentation to his or her detriment. (*In re Marriage of Bashwiner* (1982), 107 Ill. App. 3d 772, 438 N.E.2d 490, 494.) The agreement was signed on or about May 19, 1989, at which time William was employed but failed to notify the court of such employment. Janet testified that she relied to her detriment on William's representation of unemployment, and had she known that he was employed, she never would have entered into an agreement to accept $75 per week for support nor would she have agreed to give William the marital residence and all of the vehicles.

We agree with Janet that William concealed the fact of his employment. We believe that William's sworn bankruptcy petition stating that his gross income was $620 per week was clear and convincing evidence of his true income. (*Tsuetaki v. Novicky* (1983), 158 Ill. App. 3d 505, 509 N.E.2d 1019.) William signed the judgment that allowed him to pay $75 per week in child support based on his unemployment status after he had filed a sworn bankruptcy petition asserting that he was gainfully employed. It has been previously held that contradictory testimony that was given in separate proceedings relative to the same factual situation can establish fraud. (See *Tsuetaki*, 158 Ill. App. 3d 505, 509 N.E.2d 1019.) Moreover, although William's counsel, who also represented him in the bankruptcy proceedings, appeared in court sev-

eral times after the bankruptcy petition was filed, he never stated that William was now employed, which constitutes concealment of a material fact upon which Janet detrimentally relied.

Additionally, the agreement specifically stated that both parties had disclosed all assets as of the date of execution of the agreement. In the present case there was a failure to disclose such interest, *i.e.*, the additional cash William received as a result of employment.

■■ A trial court will not be disturbed on review unless its decision is against the manifest weight of the evidence. (*Avenue State Bank v. Village of Oak Park* (1968), 99 Ill. App. 2d 329, 241 N.E.2d 630; *Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556, 158 N.E.2d 613.) During the July 25, 1989, proceedings on Janet's motion to modify, the trial court stated that the judgment provides that the respondent will provide notice once a year as to his income if there has been a change. The court further stated that, based upon a review of the testimony, it did not find a basis for modifying the property distribution and the respondent is obligated to pay 25% of his income as child support. However, the court did not make any specific findings concerning Janet's allegations of fraud. Nor did it reconcile the information regarding William's employment, which, it appears, was available at the time of prove up but which certainly became known before the judgment of dissolution was entered and should have been presented to the court. (See *In re Marriage of Suarez* (1986), 148 Ill. App. 3d 849, 499 N.E.2d 642.) Concealment of existing material fact is actionable where it is employed as a device to mislead (*Chapman v. Hosek* (1985), 131 Ill. App. 3d 180, 475 N.E.2d 593), such as where it relates to a matter upon which plaintiff could be expected to rely in determining whether to engage in conduct in question (*Shah v. Chicago Title & Trust Co.* (1983), 119 Ill. App. 3d 658, 457 N.E.2d 147), or such that had the defrauded party been aware of the concealed fact, he would have acted differently. See *Obermaier v. Obermaier* (1984), 128 Ill. App. 3d 602, 470 N.E.2d 1047.

Here, Janet's testimony reveals that she agreed to give William the marital residence because of his representations of unemployment and had she been aware of his actual or pending employment opportunity, she would have acted differently. William contends that the parties' negotiation of the agreement was extensive and provident. And in support of such contention, we are mindful of the contingency in the agreement that with respect to the marital residence, William had the option of conveying the property back to the lender or filing a chapter 13 bankruptcy. However, Janet acted based on the circumstances as she believed they existed. She had no employment outside the home

and had been informed that the primary provider of the family was unemployed and receiving unemployment compensation. Under these circumstances, there was no possibility of her keeping the home on $75 a week where the record reflects that the mortgage was $590 per month. Conversely, had Janet been aware of William's promise of immediate employment and that she was entitled to child support in the amount of approximately $500 a month, she may have been able to keep the home at the time and file under chapter 13 based upon her own present income and the support received from William.

Furthermore, since the house was in foreclosure, Janet was forced to make a reasoned decision immediately. Parties can only act according to present facts and circumstances. Had she known that William had a promise of employment and the amount he would receive from Plote Excavating as stated in his affidavit, she may have acted differently. William began working only two weeks after the prove up. He remained employed with Plote for several weeks on a steady basis up to and including the time he signed the judgment. He then worked for another company for several weeks. According to his own testimony, William stated that he did not give Janet 25% of the Plote checks.

■■■ Accordingly, we find that, based upon the circumstances of this case, William had an affirmative duty to disclose all information regarding his increase in income and change of employment status to Janet prior to signing and the court's entry of the judgment. As previously discussed, failure to disclose material information under certain circumstances in which a duty to speak exists, as here, amounts to fraud. See *Illinois Central Gulf R.R. Co. v. Department of Local Government Affairs* (1988), 169 Ill. App. 3d 683, 523 N.E.2d 1048.

With respect to the question regarding unconscionableness of the settlement agreement, our review of the record reflects that Janet was unemployed throughout the majority of the proceedings and because she was required to find housing and support her children on $75 per week, she and her children were forced to eat out of a food pantry, whereas William was given the marital residence and most of the vehicles under the agreement: Moreover, at the time judgment was entered, William had net earnings of no less than $420 per week, rather than the small amount he represented to the court he was receiving from unemployment compensation. Thus, Janet was eligible to receive a minimum of $125 per week from William as child support and she also may have been entitled to maintenance. (See Ill. Rev. Stat. 1987, ch. 40, par. 505.) The record shows that Janet commenced working late into the proceedings; thus, her combined earnings and appropriate

payments from William may have resulted in sufficient funds for Janet to support the children and maintain the marital residence.

*Carlson* describes an "unconscionable bargain [as one] 'which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.' [Citation.] The term 'unconscionability' includes 'an absence of a meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' [Citation.] A contract is unconscionable when it is improvident, totally one-sided or oppressive." (*Carlson*, 101 Ill. App. 3d at 930.) This court later held that the inquiry into unconscionability requires at least two considerations: (1) the conditions under which the agreement was made and (2) the economic circumstances of the parties that result from the agreement. *In re Marriage of Foster* (1983), 115 Ill. App. 3d 969, 972, 451 N.E.2d 915, 918.

Applying those principles to the case at bar, we conclude that William had prospects of immediate employment but did not advise the court or Janet's attorney; nor did he advise them when he became employed or increase his child support payments to reflect the 25% increase he was required to pay on behalf of the children. As previously discussed, the conditions under which the agreement was made immediately changed, causing a substantial change in the economic circumstances of the parties and a corresponding duty on William's part to speak. Moreover, William retained virtually all of the marital assets while Janet received only one vehicle.

We conclude that the existence of an additional fact, which became apparent after the cause proceeded to trial but prior to judgment, required the trial court to consider vacating the earlier judgment to make a determination as to whether such agreement was procured by fraud or at least make a determination as to whether the additional factor rendered the agreement fair and conscionable under the circumstances. The purpose of a petition for rehearing to modify or revise judgment is to permit modification or vacation of judgments where facts exist which, had they been known to the trial court, would have precluded judgment.

As there was an affirmative duty on the part of William to disclose the conditions surrounding his employment so that Janet would have the same facts at her disposal as William in negotiating the property settlement and prior to signing off on the judgment, we find that failure to disclose on the part of William deprived Janet of a material fact necessary to intelligently arrive at a settlement agreement and further deprived the trial court of an opportunity to correctly de-

termine the propriety of the agreement and whether it was unconscionable. (See *Garmisa v. Garmisa* (1972), 4 Ill. App. 3d 411, 280 N.E.2d 444.) Once it was apprised of all the facts, the trial court erred in refusing to respond to Janet's assertions regarding William's intentional concealment of the conditions surrounding his employment and, by its failure to inquire further into the current status of William's employment, how it affected the parties' financial circumstances and what bearing it had upon the distribution of the property, if any.

Accordingly, we affirm the trial court's order of dissolution of the marriage between the parties. We reverse the portion of the trial court's order denying Janet's motion to modify the judgment. In light of William's concealment under circumstances wherein he had a duty to speak and disclose all pertinent information, we remand this cause to the trial court for the purpose of conducting a full evidentiary hearing pursuant to sections 502 and 510 of the Act (Ill. Rev. Stat. 1987, ch. 40, pars. 502, 510), on the issue of the propriety of the settlement agreement with respect to the marital residence.

Affirmed in part; reversed in part and remanded.

CAMPBELL and BUCKLEY, JJ., concur.